Edward N. COX, Sr. and Eileen Cox, Co-Administrators of the Estate of Kenneth Cox, deceased, and on behalf of the heirs of Kenneth Cox, deceased

v.

### VELSICOL CHEMICAL CORPORATION.

**Civ. A. No. 87–0775.**

United States District Court, E.D. Pennsylvania.

Feb. 2, 1989.

Lee B. Balefsky, Greitzer and Locks, Philadelphia, Pa., for plaintiffs.

Thomas J. Elliot, Baskin Flaherty Elliot & Mannino, P.C., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

ROBERT F. KELLY, District Judge.

The question for decision in defendant Velsicol Chemical Corporation's Motion for Summary Judgment based on Federal Preemption is whether the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y, preempts the plaintiffs' state tort claims involving failure to adequately warn.

Plaintiffs' decedent, Kenneth Cox, was employed as a pest control operator for four different companies during limited intervals from 1977 to 1982. Plaintiffs allege that the decedent developed lung cancer as a result of exposure to chlordane products manufactured by the defendant. Specifically, Counts I and III of the complaint charge the defendant with negligence and strict liability for failing to give adequate warnings or instructions about the risks associated with the use of its products.

FIFRA states, in relevant part, that:

(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale *or* use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a) and (b). At first glance, the language of section (b) would seem to clearly indicate Congress' intent to preempt the states from regulating pesticide labeling. What the statute's language does not reflect, however, is the significant role the

manufacturer plays in the regulatory scheme of FIFRA.

Under FIFRA, the Environmental Protection Agency (EPA) is responsible for the registration and labeling of pesticides. FIFRA permits the EPA to register a pesticide only if the EPA makes a determination that "it will perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C). "When a pesticide is registered, the manufacturer must submit its proposed label to the EPA for approval; any changes in the label must also be approved by the EPA." *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404, 406 (E.D.Mich.1987). These labels are then subject to regulations regarding warnings and precautionary statements. *See* 40 C.F.R. § 162.10(h) (1987).

Unlike, for example, the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq*, which "prescribes the exact label of warning to be placed on each package of cigarettes," a manufacturer, pursuant to FIFRA, submits a proposed label for approval. In *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987), the Circuit Court explained the difference:

FIFRA, which applies to some 40,000 different herbicide and pesticide formulations, imposes an entirely different type of regulatory scheme from that established under the [Cigarette Labeling Act]. Under FIFRA, each manufacturer drafts a warning label for each product for EPA approval. Thus, two manufacturers of the same regulated product may use different labels of their own choosing, provided only that they obtain prior EPA approval. Further, [FIFRA] permits 'states to impose more stringent constraints on the use of EPA-approved pesticides than those imposed by the EPA,' indicating that Congress was indifferent to regulation of these products through state tort law. In contrast, the [Cigarette Labeling Act] explicitly (i) applies to cigarettes only; (ii) mandates the precise language of the label; and (iii) prohibits any state from regulating any aspect of cigarette warnings.

*Id.* at 629, n. 13 (citations omitted).

Very likely what Congress intended through FIFRA was to set minimum stan-

dards for pesticide labeling. In *Palmer,* the court further explained:

> The very fact that Congress mandated the precise wording required in a label [referring to the Cigarette Labeling Act], rather than merely establishing the 'minimum requirements' standard often found in labeling acts distinguishes the [Cigarette Labeling Act] from cases relied upon by the court and the Palmers as persuasive authority. *See, e.g., Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.) (involving FIFRA minimum labeling standards), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984)....

825 F.2d at 623, n. 5. Based on the above, we are not convinced that Congress intended to preempt the entire field of pesticide labeling thus immunizing manufacturers from state tort claims alleging inadequate warnings. The fact that manufacturers submit their own labels implies a duty to provide a label that gives adequate warnings about the risks associated with the product's use notwithstanding the approval of the EPA. Our conclusion that FIFRA does not preempt the plaintiffs' claims based on inadequate warnings is supported by a more traditional preemption analysis as well.

In *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir.1986), the Third Circuit relayed the principles set forth by the Supreme Court for determining congressional intent to preempt state authority:

> Congress may preempt state law by express statement. Without the aid of express language, a court may find intent to preempt in two general ways. First, a court may determine that Congress intended 'to occupy a field' in a given area because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' Second, in those instances where Congress has not wholly superceded state regulation in a specific area, state law is preempted 'to the extent that it actually conflicts with federal law.' The Court has stated that such conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at 185 (citations omitted). Applying these principles to the case *sub judice,* we are convinced that FIFRA does not preempt plaintiffs' claims. We agree with the conclusions reached by the District of Columbia Court of Appeals in *Ferebee:*

> First, Congress has not *explicitly* preempted state damage actions; it has merely precluded states from directly ordering changes in the EPA-approved labels ... Second, compliance with both federal and state law cannot be said to be impossible: [defendant] can continue to use the EPA-approved label and can at the same time pay damages to successful plaintiffs such as [plaintiff]; alternatively, [defendant] can petition the EPA to allow the label to be made more comprehensive. Third, state damages actions of the sort at issue here do not stand as an obstacle to the accomplishment of FIFRA's purposes. Such a conflict would exist only if FIFRA were viewed not as a regulatory statute aimed at protecting citizens from the hazards of modern pesticides, but rather as an affirmative subsidization of the pesticide industry that commanded states to accept the use of EPA-registered pesticides.

736 F.2d at 1542–43.

For these reasons, defendant's Motion for Summary Judgment based on Federal Preemption shall be DENIED.