**Ronnie KINSER, Plaintiff,**

v.

**CIBA–GEIGY CORP., Defendant.**

**Civ. A. No. C92–0114–BG(H).**

United States District Court,
W.D. Kentucky,
at Bowling Green.

Nov. 4, 1993.

**218**

Nancy Oliver Roberts, Bowling Green, KY, for plaintiff.

W. Kennedy Simpson, Stites & Harbison, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This diversity action is before the Court on motion of Defendant, Ciba–Geigy Corporation, for summary judgment and on motion of Plaintiff, Ronnie Kinser, to amend the Complaint. Plaintiff brought this action in connection with the use of a herbicide produced by Defendant and registered under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 et seq., 136a(c)(1)(C) (1980 & Supp.1993). Plaintiff claims that the use of this herbicide caused damage to his field corn crop and seeks damages under the state common law of strict liability, warranty, and negligence. Defendant moves for summary judgment as to the original complaint on the basis of federal pre-emption and objects to the filing of the amended complaint because it does not state a cause of action against the Defendant.

This is an unfortunate case because Plaintiff has suffered a significant economic loss caused by the loss of his corn crop. However, careful analysis of Plaintiff's claim after close questioning of counsel reveals that Defendant cannot be held legally responsible for this loss. The simple fact is that Plaintiff charges and proposes a chain of causation which does not implicate Defendant. Under the theory Plaintiff proposes, legal responsibility might well fall to others such as a pesticide producer or those responsible for applying the combination of chemicals to Plaintiff's fields. For reasons of Plaintiff's own choice, these parties are not before the Court.

For the reasons stated herein, the Court will dismiss this action.

### I.

Review of both the Motion to Amend the Complaint and the Motion for Summary Judgment are substantially similar. On the motion for summary judgment, the Court must determine whether Defendant is entitled to judgment even construing the evidence in a light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With regard to the motion to amend, Rule 15 provides that leave should be liberally granted. However, the Court may deny leave to amend in the event a proposed amendment would not withstand a motion to dismiss. *Hoover v. Langston Equip. Assoc. Inc.,* 958 F.2d 742, 745 (6th Cir.1992). Failure to state a claim, in turn, is ground for dismissal where, even accepting the truth of Plaintiff's allegations and all reasonable inferences, Plaintiff fails to state a claim. *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978). To the extent, therefore, that the pending motions turn on an issue of law, this case is properly before the Court for final disposition.

### II.

Defendant produces and sells a federally registered herbicide under the trademark

"Beacon" for postemergence weed control in field corn. It is not too elementary to note that "Beacon" kills or controls weeds, not insects. Among those weeds Beacon controls is Johnsongrass. Plaintiff purchased Beacon from a dealer, Southern States Cooperative, Inc., (who is not a party to this action) and hired Southern States to apply Beacon as directed on the label on his field corn crop to control Johnsongrass. Plaintiff's crop consisted of four corn hybrids that, significantly, are not resistant to viral diseases, namely, Garst 8250; Zimmerman 16W; Zimmerman 27; and Pioneer 3184. According to Plaintiff, the application of Beacon complied with label instructions. Unfortunately, Plaintiff's field corn turned red, and what did not die, yielded small ears of corn. It is not disputed that Beacon in fact killed the Johnsongrass. Plaintiff attributes the cause of the crop damage to pests. Specifically, aphids that had infested the Johnsongrass until treated with Beacon, then infested the corn crop, transmitting viral diseases to the corn resulting in yield loss. All of these facts asserted by Plaintiff may be undisputed and, in any event, the Court adopts Plaintiff's version as true for purposes of these motions.

### III.

The Federal Insecticide, Fungicide, and Rodenticide Act requires herbicide producers to register their products with the Environmental Protection Agency before any offering for sale. 7 U.S.C. § 136a. Applicants for registration must establish, among other things, that the product will perform its intended purpose without unreasonable adverse effects on the environment; that when used in accordance with widespread and commonly recognized practice, it will not generally cause unreasonable adverse effects on the environment; and that the labeling complies with FIFRA requirements. 7 U.S.C. § 136a(c)(5).

Denial of registration is a regulatory tool aimed at preventing adverse environmental consequences before actual use. The EPA, moreover, retains enforcement authority over the use and application restrictions detailed on the product label. 7 U.S.C.

§ 136j(a)(2)(G). This comprehensive federal scheme largely excludes state authority:

(a) In general
A State may regulate the sale or use of any federally registered [herbicide] in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v (1993 Supp.).

■ In the original Complaint, Plaintiff alleges that Beacon is inherently dangerous for its use on non-virus resistant field corn and that Defendant's label inadequately warned Plaintiff of that danger. Defendant moved for summary judgment on the basis of federal pre-emption. Although the Sixth Circuit has not addressed FIFRA's pre-emption provision, all other circuits that have passed on this issue have held that FIFRA expressly pre-empts state common law negligent failure to warn. *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993); *King v. E.I. DuPont De Nemours and Co.,* 996 F.2d 1346 (1st Cir.1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364 (7th Cir.1993); *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.1993) cert. denied, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177 (10th Cir.1993). This Court finds these holdings persuasive and will not reiterate the legal analysis here.

In three of the above cases, plaintiffs also advanced theories of strict liability. Each circuit dismissed those claims on the basis of federal pre-emption. *Shaw,* 994 F.2d at 365; *Papas,* 985 F.2d at 517; *King,* 996 F.2d at 1347. This Court is likewise persuaded that Plaintiff's strict liability claim falls within FIFRA's preemptive scope. As in *Shaw, Papas,* and *King,* Plaintiff's strict liability claim turns on inadequate warning. Plaintiff does not submit that Beacon is unreasonably dangerous on the basis of defective design or a flaw in this product present at the time of purchase. Plaintiff, instead, claims that Beacon is unreasonably dangerous because it

failed to carry warnings against its use on non-virus resistant corn hybrids.

Strict liability on the basis of a producer's failure to adequately warn of a risk associated with the product's intended use would effectively require a producer to change its label. FIFRA expressly pre-empts precisely this result, no matter how indirect, *see Cipollone v. Liggett Group, Inc.,* — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Because Plaintiff's strict liability claim challenges the adequacy of the label, the Court holds that Defendant is entitled to summary judgment on the original complaint.

## IV.

Plaintiff moves to amend the Complaint by adding breach of warranty and negligent testing. In a lengthy conference with the parties, the Court extensively explored the facts that Plaintiff intends to prove as related to Plaintiff's legal theory of the case. Plaintiff's chief complaint remains that Defendant failed to warn him that the use of Beacon on non-virus resistant field corn would result in crop damage. The distinction from the original Complaint, however, is that this omission constitutes a breach of warranty and negligent testing. At this point, it is necessary to consider additional facts that came to light during the conference to understand the thrust of Plaintiff's argument.

The FIFRA registered Beacon label contemplates the use of Beacon on all varieties of field corn with limited exception. The Beacon label warns that some field corn hybrids may be "potentially susceptible" to injury caused directly by Beacon application. (Exhibit A, ¶ 12 at 12, Pla.Mo. for Sum. J.). The label, thus, requires users to consult a chemical dealer, seed supplier, or corporate representative for a current listing of field corn hybrids classified as "potentially susceptible" to Beacon.

■ Because new hybrids are created every year, Defendant compiles a "susceptibility" list in the following manner. Hybrid producers send new hybrids to Defendant

and Defendant then tests Beacon on these hybrids. Those hybrids that Defendant concludes are "potentially susceptible" are compiled on an updated list and circulated among seed corn dealers and others where those hybrids are marketed. If applying Beacon to a corn hybrid, the label expressly cautions a user to consult the seed dealer or Defendant to determine susceptibility. (Exhibit A, ¶ 5, at 12.) Because Beacon is FIFRA registered, this process set forth in the label is presumptively sufficient since FIFRA expressly pre-empts any state labeling requirement to the contrary.

In this case, Defendant represented to the Court that, in fact, it had tested the hybrids that Plaintiff used and had concluded that they were Beacon tolerant.[1] Plaintiff questioned whether these hybrids were classified as low tolerant or high tolerant. This question, as the Court will explain, confuses two entirely separate concepts. The significant point for this Court is that they were in no case classified as "potentially susceptible." Therefore, the hybrids that Plaintiff used were not placed on any warning list. As to all of these facts, there was no dispute.

■ Plaintiff's apparent misunderstanding of significant terminology manifests itself in the legal theory of this case as follows. Plaintiff alleges that the relevant hybrids should have been classified as susceptible to injury after Beacon application. The basis of this allegation, however, is fact specific to this case. Plaintiff does not argue that the Beacon application alone caused crop damage but that the crop damage was due to the hybrid's inherent non-resistance to disease transmitted by aphids and merely secondarily due to Beacon application. Thus, Plaintiff argues that Defendant should have classified the relevant hybrids as potentially susceptible and should have warned Plaintiff of that danger *for the limited reason* that aphids will infest non-virus resistant field corn transmitting disease after the application of Beacon. In other words, because the relevant hybrids are non-resistant, Plaintiff argues, Defendant should have classified them as potentially susceptible.

---

1. This might have been an admission against its interest except that Plaintiff does not claim that the application of "Beacon" on the hybrid corn caused the corn to die.

This argument, however, confuses "susceptibility" and "resistance." "Resistance" is a term used to describe a hybrid's tolerance to *disease.* "Susceptibility" is a term used by Defendant to describe a hybrid's tolerance to *chemicals,* in this case Beacon. The Beacon label accordingly cautions users that some hybrids may be *susceptible* and to consult the current list before application. (Exhibit A, ¶ 5 at 12.) The Beacon label also warns users of *resistance:*

> Aphids or other insects infesting johnsongrass may move to the corn crop following control of the johnsongrass with Beacon. The insects may transmit viral diseases to the corn resulting in corn stunting, leaf discoloration, and yield loss. Virus resistant corn hybrids and/or control of the insects may be used to reduce the likelihood of disease development.

(Exhibit A, ¶ 7 at 13.)

Plaintiff's theory of the case, therefore, is that Defendant failed to classify the relevant non-virus resistant hybrids as potentially susceptible, notwithstanding the resistance distinction; or alternatively, Plaintiff argues that Defendant should have provided a list not only of those hybrids potentially susceptible but also low resistant to disease; that but for Defendant's failure to warn of non-resistance, aphids infested Plaintiff's corn hybrids resulting in yield loss. Plaintiff argues in short that neither precaution of the label is sufficient. In this context, the Court will determine whether Plaintiff is entitled to relief under warranty or negligence law, accepting the truth of Plaintiff's allegations and construing all reasonable inferences in Plaintiff's favor.

█ In the Beacon label, Defendant expressly warranted Beacon's fitness for its intended purpose. The intended purpose of Beacon is to control Johnsongrass, not pests. Plaintiff submits that Defendant breached its warranty since the Beacon application was a necessary predicate to the aphid-inflicted disease that caused crop yield loss. Defendant's warranty, however, is conditioned on

the precautions disclosed. In paragraph seven of the precautions listed on the label as fully quoted above, Defendant specifically warned users of the collateral effects of using Beacon on non-virus resistant hybrids and suggested concurrently using a pesticide to control aphids. The warranty exclusion is broad, and the Court holds that the label is sufficient to shift responsibility to Plaintiff for covering this risk of crop damage.[2]

█ Plaintiff also alleges that notwithstanding the contractual limitations of warranty law, Defendant was negligent because 1) Defendant should have classified the relevant hybrids as potentially susceptible due to their non-virus resistant character; or 2) even if not technically "susceptible", Defendant should have tested these hybrids for "resistance" and disclosed that information, or if it knew that these hybrids were non-resistant, Defendant should have disclosed this information to its users.

Plaintiff's counsel argued forcefully that Plaintiff's livelihood has been destroyed. This may be the sad truth. However, it is equally unfair to require Defendant to answer for charges which, as articulated by Plaintiff in this Court, do not provide a remedy against Defendant. While it may be true that the use of Beacon on the Johnsongrass was a proximate cause of the crop damage, this does not give rise to negligence liability. Rather, it is the breach of a legal duty that must cause injury, and predicate to the breach is the existence of a legal duty. The Court can not conceive of a common law duty supporting Plaintiff's theories.

Whether a particular hybrid is resistant to disease is of no concern to a herbicide producer, although a chief concern of a corn hybrid producer. Beyond the warranty of fitness for its intended purposes which in this case excluded non-virus resistant hybrids, a herbicide producer has no duty to determine whether a corn hybrid is resistant to *disease,* but instead has a duty to determine the

---

2. At conference the Court discussed this very point. Plaintiff's counsel stated that Southern States also sprayed Plaintiff's field with a pesticide in addition to the herbicide, Beacon. Ap-. parently, either the pesticide did not do its job properly or an inadequate pesticide was applied, because the aphids survived.

susceptibility of all corn to the active ingredients of its herbicide.

■ Defendant has no duty otherwise under state law to test hybrids for disease resistance. Again, this is the obligation of a corn hybrid producer. In negligence jurisprudence, courts impose *ad hoc* a standard of conduct by reference to the objective reasonableness of one's actions. Defendant's failure to test and disclose a corn hybrid's resistance to disease is reasonable not only under state law but as a matter of federal law since FIFRA registration does not require it. Doubtless, it would be unreasonable to require Defendant to test and represent the inherent qualities of corn hybrids. Quite simply, Defendant is not in the corn hybrid business. Any state standard of conduct requiring additional information on a FIFRA label is in any case expressly pre-empted. The Court, therefore, holds that the amended Complaint fails to state a claim.

The Court is entering an Order consistent with this Memorandum Opinion.

### ORDER

This case is before the Court on Defendant's motion for summary judgment and on the motion of Plaintiff to amend the complaint. The Court having reviewed the memoranda, pertinent authority, and the record, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion to amend the Complaint is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is SUSTAINED and the complaint is DISMISSED with prejudice.

This is a final and appealable order and there is no just reason for delay.