**Janet KENEPP and Earl Kanepp**

v.

**AMERICAN EDWARDS LABORATORIES, Metrex Research Corporation, Wave Energy Systems, Inc.,**

**Janet KENEPP and Earl Kenepp**

v.

**JOHNSON & JOHNSON MEDICAL, INC.**

Civ. A. Nos. 92–3810, 93–2660.

United States District Court,
E.D. Pennsylvania.

Aug. 1, 1994.

Stuart J. Agins, Bernstein, Silver & Gardner, Philadelphia, PA, for plaintiffs.

Robert A. Limbacher, Dechert, Price & Rhoads; Cynthia Philo, Murphy & O'Connor; Michael J. Dunn; Jonathan Dryer, Wilson, Elser, Moskowitz, Edelman & Dicker; Mark N. Cohen, John P. Blake, Margolis, Edelstein & Scherlis, and Bernard J. Smolens, Hoyle, Morris & Kerr, Philadelphia, PA, for defendants.

Robert A. Limbacher and Hope M. Freiwald, Dechert, Price & Rhoads, Philadelphia, PA, for respondent.

### MEMORANDUM

CAHN, Chief Judge.

In these consolidated civil actions, the plaintiff Janet Kenepp ("Mrs. Kenepp") alleges that she suffered personal injury as a result of her exposure to disinfectant chemicals that the defendants either manufactured, supplied, distributed or sold. Earl Kenepp, her husband, asserts a claim for loss of consortium. Jurisdiction is premised upon di-

versity of citizenship, 28 U.S.C. § 1332, and venue is proper under 28 U.S.C. § 1391(a). Currently before the court are motions for summary judgment by the defendants Wave Energy Systems, Inc. ("Wave") and Johnson & Johnson Medical, Inc. ("Johnson & Johnson"), and Metrex Research Corporation ("Metrex") (collectively, "the defendants"). For the reasons set forth below, the court will grant the motions.

## I. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary judgment is appropriate if "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Vines v. Howard*, 676 F.Supp. 608, 610 (E.D.Pa.1987). The non-moving party must then go beyond the pleadings to "establish the existence of each element on which it bears the burden of proof," *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991), because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

When considering a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The court may not make credibility determinations or weigh the evidence. *Id.* at 252, 106 S.Ct. at 2512. If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. DISCUSSION

The relevant facts are not in dispute. Mrs. Kenepp is a nurse at the Lancaster General Hospital in Lancaster, Pennsylvania. Each of the defendants manufactures a disinfectant solution that contain glutaraldehyde, a chemical compound designed to kill infectious viruses in hospital environments. During her employment at Lancaster General, Mrs. Kenepp regularly was exposed to the defendants' products. She now suffers from respiratory disease and other chronic illnesses that this exposure allegedly caused. Her claims sound in strict products liability, negligence and breach of warranty.

### A. Strict Liability

■ Under Pennsylvania law,[1] a plaintiff may prove that a product is defective by demonstrating that the supplier sold the product with a manufacturing or design defect, or without warnings sufficient to permit safe use of the product. *Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (1984) (citing *Sherk v. Daisy–Heddon*, 498 Pa. 594, 450 A.2d 615 (1982)). *See also Nowak v. Faberge U.S.A., Inc.*, 32 F.3d 755, 756–757 (3d Cir.1994) (collecting Pennsylvania cases). Mrs. Kenepp acknowledges that her main claim involves the defendants' alleged failure to provide adequate warnings as to the safe use of glutaraldehyde solutions. In her complaint, she also alleges that the defendants sold their products with manufacturing and design defects. However, the record is completely devoid of any evidence that the defendants' products contained such defects. Accordingly, the court will grant summary judgment to the defendants on these issues. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.").

1. When sitting in diversity, this court applies the substantive law of Pennsylvania, including Pennsylvania's choice of law rules. The parties do not dispute—and the court therefore assumes—that Pennsylvania tort law applies to this dispute.

The Pennsylvania Supreme Court has adopted the standard for strict products liability set forth in the Restatement (Second) of Torts § 402A. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966).

Therefore, Mrs. Kenepp's strict liability claim is limited to a failure to warn theory.

### 1. Failure to Warn/Inadequate Labeling

In their motions, the defendants point out that Congress and the Environmental Protection Agency ("EPA") regulate the labeling of their products pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y. It is undisputed that each of the defendants submitted proposed labels for its product to the EPA for approval pursuant to FIFRA. The EPA approved the defendants' labels, which the defendants then affixed to their products prior to sale.

The defendants now argue that FIFRA preempts Mrs. Kenepp's state law claims for failure to label the products adequately and failure to provide sufficient warnings for their use. The plaintiffs correctly note that in *Cox v. Velsicol Chem. Corp.*, 704 F.Supp. 85 (E.D.Pa.1989), this court held that FIFRA does not preempt such claims. Three years after this court's opinion in *Cox*, the Supreme Court issued its opinion in *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion), which held that the federal cigarette labeling statute preempts state law tort claims for inadequate labeling and failure to warn. The defendants now ask the court to evaluate their FIFRA preemption argument in light of the intervening *Cipollone* opinion. After careful consideration of the parties' arguments, I conclude that in light of *Cipollone*, I must hold that FIFRA expressly preempts Mrs. Kenepp's labeling and warning claims.

■ Under the Supreme Court's interpretation of the "Supremacy Clause," U.S. Const. Art. VI, cl. 2, validly promulgated federal law "preempts" inconsistent or otherwise conflicting state law. *Maryland v. Louisiana*, 451 U.S. 725, 726, 101 S.Ct. 2114, 2118, 68 L.Ed.2d 576 (1981). In cases where the federal law at issue is an act of Congress, the court must determine whether the state law at issue contravenes the congressional purpose behind the act. *Malone v. White*

*Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (calling the purpose of Congress the "touchstone" of preemption analysis). The Supreme Court recently has set forth the interpretive technique for determining whether Congress intended legislation to preempt state law:

> Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field "'as to make reasonable the inference that Congress left no room for the States to supplant it.'"

*Cipollone*, —— U.S. at ——, 112 S.Ct. at 2617 (internal citations omitted).

■ In FIFRA, Congress sought to create a comprehensive licensing and labeling scheme for pesticides and other poisonous devices designed to kill physically and economically harmful organisms. *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1305 (7th Cir.1992). Section 136v sets forth the authority of the States to regulate the sale and use of such devices:

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such state shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v. Section 136v therefore permits States wide latitude to regulate the sale or use of pesticides. *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 611, 111 S.Ct. 2476, 2485, 115 L.Ed.2d 532, 547 (1991). However, it expressly prohibits States from imposing labeling or packaging "requirements" that differ from or add to FIFRA's requirements. 7 U.S.C. § 136v(b).

The Court of Appeals for the Third Circuit has not considered whether FIFRA

§ 136v(b) preempts state law tort claims based upon inadequate product labeling or failure to warn. As previously noted, this court held in 1989 that § 136v(b) does not preempt such claims. *Cox v. Velsicol Chem. Corp.*, 704 F.Supp. 85 (E.D.Pa.1989). In *Cox*, the court relied upon *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3d Cir.1986), in which the Court of Appeals for the Third Circuit analyzed the preemptive effect of the Federal Cigarette Labeling and Advertising Act ("Cigarette Act"), 15 U.S.C. §§ 1331–1340, and held that the Cigarette Act preempted some state law tort claims premised upon a failure to warn consumers about the deleterious effects of cigarette smoking. 789 F.2d at 187. After reviewing the Court of Appeals' discussion of express and implied preemption principles, this court concluded that " 'Congress has not *explicitly* preempted state damage actions; it has merely precluded states from directly ordering changes in the EPA-approved labels....' " *Cox*, 704 F.Supp. at 87 (quoting *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1542 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984) (emphasis in original)).

After this court's opinion in *Cox*, the Supreme Court granted certiorari in *Cipollone* to consider the preemption issue.[2] The Court evaluated a Cigarette Act provision that prohibited any "requirement or prohibition ... imposed under State law." *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2619. The petitioner in *Cipollone* contended that the Cigarette Act language prohibited only positive state law regulation and did not preempt common law damages actions for failure to provide adequate warnings or labeling. The Supreme Court disagreed:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

*Id.*, 112 S.Ct. at 2620 (internal citations omitted). The Court then held that the Cigarette Act preempted the plaintiff/petitioner's state law claims for failure to warn, inadequate labeling, and breach of implied warranty. *Id.*, 112 S.Ct. at 2621.[3]

At the time that *Cox* was before this court, only one circuit court had considered the preemptive effect of FIFRA § 136v(b). In *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1542 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), the court held that FIFRA § 136v(b) does not preempt state law failure to warn claims. This court adopted *Ferebee*. *Cox*, 704 F.Supp. at 87. After this court's opinion in *Cox*, but before *Cipollone*, three other circuit courts disagreed with *Ferebee* and held that § 136v(b) *impliedly* preempts such state law claims. *Papas v. Upjohn Co.*, 926 F.2d 1019, 1024–25 (11th Cir.1991) (per curiam) [hereinafter "*Papas I* "]; *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 959 F.2d 158, 161 (10th Cir.1992) [hereinafter "*Arkansas–Platte I* "] (agreeing with *Papas*); *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1307 (4th Cir.1992) [hereinafter "*Worm I* "] (same). In *Papas* and *Arkansas–Platte*, petitions for certiorari were pending when the Supreme Court issued *Ci-*

2. After the Court of Appeals issued its opinion on the preemption issue, which is reported at 789 F.2d 181, it remanded the case to the United States District Court for the District of New Jersey for trial on the remaining issues. After the district court denied the post-trial motions, the parties again appealed. *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541 (1990). After this second appeal, the plaintiff petitioned for certiorari.

3. The plaintiffs urge this court to be wary of extrapolating from *Cipollone* because Justice Ste-

vens wrote for a plurality of four in that case. A careful reading of *Cipollone* reveals that Justice Scalia, joined by Justice Thomas, concurred with the plurality's conclusion that the Cigarette Act preempted common law tort claims. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2634 (Scalia, J., concurring in judgment in part and dissenting in part). Thus, six justices agreed that the language of the Cigarette Act preempted the common law tort claims. *Worm v. American Cyanamid Co*, 5 F.3d 744, 748 n. 2 (5th Cir.1993).

*pollone.* The Supreme Court vacated both judgments and remanded the cases for consideration in light of *Cipollone. Papas v. Zoecon Corp.,* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Arkansas–Platte & Gulf Partnership v. Dow Chem. Co.,* —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992). Both the *Papas* and *Arkansas–Platte* courts reaffirmed their original judgments. *Papas v. Upjohn Co.,* 985 F.2d 516, 517 (11th Cir.) (per curiam) [hereinafter *"Papas II "*], *cert. denied, Papas v. Zoecon Corp.,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1178 (10th Cir.) [hereinafter *"Arkansas–Platte II "*], *cert. denied, Arkansas–Platte & Gulf Partnership v. Dow Chem. Co.,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993). In *Worm,* the Court of Appeals for the Fourth Circuit simply reaffirmed its decision in a later phase of that case. *Worm v. American Cyanamid Co.,* 5 F.3d 744, 749 (4th Cir.1993) [hereinafter *"Worm II "*]. Three other circuit courts have considered the issue since *Cipollone* and have reached the same result. *MacDonald v. Monsanto Co.,* 27 F.3d 1021 (5th Cir.1994); *King v. E.I. Dupont De Nemours and Co.,* 996 F.2d 1346, 1349 (1st Cir.), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir. 1993). Accordingly, each of the six circuit courts of appeals that have considered the issue in light of *Cipollone* have held that § 136v(b) preempts claims for inadequate labeling or failure to warn. Several district courts in other circuits have followed this trend. *Trinity Mountain Seed Co. v. MSD Agvet,* 844 F.Supp. 597 (D.Idaho 1994); *Quad R. Farms v. American Cyanamid Co.,* 840 F.Supp. 694 (D.Minn.1993); *Kinser v. Ciba–Geigy Corp.,* 837 F.Supp. 217 (W.D.Ky.1993); *DerGazarian v. Dow Chem. Co.,* 836 F.Supp. 1429 (W.D.Ark.1993).

This court agrees with the foregoing authority and finds particularly persuasive Judge Cummings' reasoning for the Seventh Circuit Court of Appeals in *Shaw:*

> In order to succeed in the wake of *Cipollone,* then, [the plaintiff] would have to show that FIFRA's pre-emption language is less sweeping than the language of the 1969 Cigarette Act. Yet we can discern no significant distinction at all—FIFRA says that "[s]uch State shall not impose * * * any requirements for labeling or packaging in addition to or different from those required * * *," while the cigarette law says "[n]o requirement[s] or prohibition[s] * * * imposed under State law" shall be permitted. Both seem equally emphatic: "[n]o requirements or prohibitions" is just another way of saying a "[s]tate shall not impose * * * any requirements." Not even the most dedicated hair splitter could distinguish these statements.

*Shaw,* 994 F.2d at 371. Mrs. Kenepp's attempts to distinguish FIFRA fail. First, she points out that the Cigarette Act prohibits restrictions imposed by "state law" whereas FIFRA requires only that a "State shall not impose" restrictions. She argues that the Cigarette Act is therefore broader than FIFRA § 136v, and that *Cipollone* is therefore inapposite. This court finds no functional distinction between the two phrases. Moreover, the *Cipollone* Court did not suggest that the phrase "state law" had any magic word status such that Congress' failure to include it in other statutes would be fatal to a preemption argument.

Mrs. Kenepp also argues that the overall regulatory structure of FIFRA is distinguishable from that of the Cigarette Act because FIFRA, unlike the Cigarette Act, does not mandate uniform labeling requirements. She points out that the Cigarette Act requires specific labeling language while FIFRA permits manufacturers to submit their own labeling language.

The court rejects this distinction because it misreads the import of *Cipollone.* Although a court can infer Congress' preemptive intent from a statute's structure and purpose of promoting uniformity, *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), the Supreme Court's decision in *Cipollone* did not rest upon this interpretive technique. Instead, the *Cipollone* Court parsed the language of the Cigarette Act and found Congress' preemptive intent in "the plain words" of that act. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2620.

Accordingly, *Cipollone* was an express, and not implied, preemption case. *Id.* ("Although portions of the legislative history of the 1969 Act suggest that Congress was primarily concerned with positive enactments by States and localities, the language of the act plainly reaches beyond such enactments:"). *Compare Papas I*, 926 F.2d at 1026 ("We hold that FIFRA impliedly preempts state common law tort suits."), *with, Papas II*, 985 F.2d at 517 ("Having looked at *Cipollone*, we conclude that FIFRA expressly preempts the Papases' claims."). Assuming for the sake of argument that the structures of the respective acts are distinguishable on the basis of their tendencies to promote uniformity in labeling, this court need not analyze the distinction because the plain language of § 136v(b) expressly preempts the failure to warn claims in this case.

A recent opinion by the Court of Appeals for the Third Circuit confirms this express preemption analysis. In *Gile v. Optical Radiation Corp.*, 22 F.3d 540 (3d Cir.1994), the court analyzed a similarly worded provision of the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360k(a). After reviewing the Supreme Court's opinion in *Cipollone*, the *Gile* panel reasoned:

> Gile contends that there cannot be express preemption unless Congress uses "the words 'common law' or something analogous" to indicate its intent to preempt such claims. However, the MDA, providing "no State or political subdivision of a State may establish ... any requirement ... different from, or in addition to, any requirement applicable under this chapter," is indistinguishable from the act at issue in *Cipollone* * * * Thus, Gile's argument that Congress needs to explicitly provide that common law claims are preempted in order to find express preemption is unpersuasive.

*Id.* at 543. The foregoing discussion in *Gile* suggests that the Court of Appeals would employ the same reasoning in construing FIFRA § 136v(b).

In light of the foregoing discussion, the Supreme Court's opinion in *Cipollone*, and the overwhelming weight of authority from the circuit courts of appeals that have considered the question, I conclude that *Cox* no longer represents a viable reading of § 136v(b). This court therefore holds that 7 U.S.C. § 136v(b) expressly preempts Mrs. Kenepp's state law claims to the extent that they are based upon allegedly inadequate labeling or packaging. By necessity, FIFRA also preempts Mrs. Kenepp's claims that the defendants failed to provide adequate warnings. Such claims "necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging." *Papas II*, 985 F.2d at 519. *Accord, Worm II*, 5 F.3d at 749; *King*, 996 F.2d at 1349; *Shaw*, 994 F.2d at 371; *Arkansas–Platte II*, 981 F.2d at 1179. For the same reason, § 136v(b) also preempts Mrs. Kenepp's breach of warranty claim insofar as that claim rests upon a warranty implied under law. *Cipollone*, —— U.S. at ——–——, 112 S.Ct. at 2622–23.

### 2. *Waiver of the Preemption Defense*

The plaintiffs argue in the alternative that preemption is an affirmative defense which, under Fed.R.Civ.P. 8(c), is waived if not pleaded. Where a preemption argument affects a choice of law determination, courts have held that the argument constitutes an affirmative defense which a defendant can waive by failing to plead it affirmatively. *See generally, Rehabilitation Inst. v. Equitable Life Assurance Soc.*, 131 F.R.D. 99, 100–101 (W.D.Pa.1990), *aff'd*, 937 F.2d 598 (3d Cir. 1991). Conversely, where a successful preemption argument affects the choice of forum, and consequently deprives the court of subject matter jurisdiction, the defense is not one that a party can waive. *Id.*

The court assumes without deciding that FIFRA preemption is an affirmative defense and that failure to plead it can constitute a waiver of that defense. Johnson & Johnson pleaded preemption in its answer and therefore did not waive it. Wave and Metrex did not plead preemption initially, but both moved to amend their answers in response to the plaintiffs' waiver argument. Under Fed.R.Civ.P. 15(a):

> ... a responsive pleading may be amended at any time by leave of the court to include an affirmative defense, and "leave shall be

freely given when justice so requires." Unless the opposing party will be prejudiced, leave to amend should generally be allowed. Moreover, under Fed.R.Civ.P. 15(c), issues tried by express or implied consent of the parties are "treated in all respects as if they had been raised in the pleadings." It has been held that a "defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to respond.'"

*Charpentier v. Godsil,* 937 F.2d 859, 863–64 (3d Cir.1991), *quoted in, Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1374 (3d Cir. 1993).

 In general, a motion for summary judgment is not the most appropriate way to raise for the first time a previously unpleaded affirmative defense. *Kleinknecht,* 989 F.2d at 1374. However, where the facts underlying the defense are not in dispute and "the issue presents only a question of law for resolution," prejudice to the opposing party is difficult to show. *Id. See also Kennan v. Dow Chem. Co.,* 717 F.Supp. 799, 811 (M.D.Fla.1989) (holding that the plaintiff could not show prejudice where the defendant's FIFRA preemption defense raised no fact issues on which the plaintiff could conduct discovery to counter the defense). The plaintiffs identify no prejudice. As noted above, Mrs. Kenepp does not dispute that the defendants submitted their labels to EPA for approval and that the EPA approved their labels pursuant to FIFRA.[4]

The court recognizes that the trial date is imminent. However, the plaintiffs do not—and really cannot—complain that the preemption defense surprises them. As previously noted, Johnson & Johnson pleaded the defense in its answer to the plaintiffs' claims against it. American Edwards Laboratory, which is no longer a defendant in this case,

also affirmatively pleaded a preemption defense. The plaintiffs' claims against Wave and Metrex are identical to those they asserted against Johnson & Johnson and American Edwards. Any argument by the plaintiffs that they could not anticipate Wave's and Metrex's assertion of the preemption defense would appear disingenuous. Moreover, the plaintiffs do not suggest that the defendants have exhibited undue delay, bad faith or some other dilatory motive for failing to plead the defense or amend their answers promptly. *Arab African Int'l. Bank v. Epstein,* 10 F.3d 168, 174 (3d Cir.1993).

The court therefore concludes that Wave and Metrex have not waived their preemption defense and that they are entitled to amend their answers pursuant to the liberal requirements of Fed.R.Civ.P. 15. *See Kennan,* 717 F.Supp. at 809–811 (permitting the defendants to assert their FIFRA § 136v(b) preemption defense despite the fact that defendants raised it for the first time in their motion for summary judgment). The court therefore will grant Wave and Metrex leave to amend their answers to plead the preemption defense affirmatively. Because the court concludes that all defendants have raised FIFRA preemption in a timely fashion, the court will grant summary judgment for the defendants and against Mrs. Kenepp on all claims based upon the labeling of the products, the adequacy of any warnings and the breach of any warranty implied under state law.

### B. Negligent Design/Manufacture

The plaintiffs have failed to identify any evidence of negligence on the part of the defendants. It appeared to the court at oral argument on the motions for summary judgment that the plaintiffs abandoned their negligence theory. Because the plaintiffs cannot rest on their pleadings, the court will grant

---

4. In their supplemental memorandum, the plaintiffs argued that FIFRA applies only to "pesticides" and that the defendants' glutaraldehyde solutions fall outside of the definition of "pesticide." Under FIFRA, the term "pesticide" means "any substance ... intended for ... destroying ... any pest." 7 U.S.C. § 136(u). The term "pest" includes any form of "virus, bacteria, or other micro-organism (except viruses,

bacteria or other micro-organisms on or in living man or other living animals)." 7 U.S.C. § 136(t). The defendants' products are designed in part to kill the Human Immunodeficiency Virus (Type 1) on hospital instruments, and are not for use "on or in living man." Accordingly, the court finds that the defendants' products are "pesticides" within the meaning of FIFRA.

summary judgment for the defendants with regard to this issue.

## C. Breach of Warranty

■ The court already has concluded that FIFRA preempts Mrs. Kenepp's claim for breach of warranty insofar as that claim rests upon warranties implied under state law. Accordingly, her remaining theory sounds in breach of express warranty. The Pennsylvania Commercial Code provides:

Express warranties by affirmation, promise, description or sample

(a) General rule.—Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) Formal words or specific intent unnecessary.—It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.

13 Pa.C.S. § 2313. The plaintiffs argue that, notwithstanding FIFRA's preemptive effect on claims of inadequate labeling or failure to warn, claims for breach of express warranty may be premised upon representations that a supplier makes in its labels, brochures and other literature. This court agrees. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2622

("... the 'requirements' imposed by an express warranty are not 'imposed under state law,' but rather imposed by the warrantor.").

■ The plaintiffs argue that the defendants' labels and Material Safety Data Sheets ("MSD Sheets")[5] contained express warranties that the defendants breached. With respect to the labels, the court finds that they contain no language of promise, description, or affirmation of fact that conceivably could constitute an express warranty as to product safety.

With regard to the MSD Sheets of Wave and Metrex, both sheets similarly lack any language that could constitute an express warranty. Moreover, both Wave and Metrex inserted explicit disclaimers of warranty in their respective MSD Sheets. *See* 13 Pa.C.S. § 2316 (setting forth the construction of limitations on express warranty). Johnson & Johnson's MSD Sheet, which does not contain a disclaimer, states with respect to chronic health hazards: "None [are] known from currently available information." The court concludes that this language does not constitute an express warranty.

It is well-settled that although "a warranty requires no particular form of words, the naked averment of a fact is neither a warranty itself, nor evidence of it." *Michelin Tire Co. v. Schulz,* 295 Pa. 140, 145 A. 67, 68 (1929) (citation omitted). The isolated representation that plaintiffs rely upon, without more, does not suggest that Johnson & Johnson intended to warrant that its product would conform to the representation. Rather, the court infers that because the MSD Sheet is a required disclosure under federal law, the representations made therein were not directed at consumers in order to induce purchases of the product. *Silverman v. Samuel Mallinger Co.,* 375 Pa. 422, 100 A.2d 715, 719 (1953). This inference suggests that the MSD Sheet was not "part of the basis of the bargain" between Johnson & Johnson and potential buyers. 13 Pa.C.S. § 2313. Therefore, the court concludes that the John-

---

5. Manufacturers must submit MSD Sheets to the Occupational Safety and Health Administration ("OSHA") in order to comply with federal laws regarding occupational safety. An MSD Sheet contains, among other things, information about the potential health risks involved in using the product.

son & Johnson MSD Sheet does not constitute an express warranty as to the safety of its product. Accordingly, the court will grant summary judgment to all defendants on the breach of express warranty claim.

### III. CONCLUSION

The parties acknowledge—and the court agrees—that this suit is a "failure to warn" case. Unfortunately for the plaintiffs, Congress has expressly preempted such claims in FIFRA § 136v(b). Each of Mrs. Kenepp's other claims cannot withstand summary judgment because the record reveals a complete failure of proof with regard to those claims. Because the defendants are entitled to summary judgment on Mrs. Kenepp's claims, Mr. Kenepp's claims for loss of consortium also fail. The court therefore concludes that the defendants are entitled to judgment in their favor on all counts in the plaintiffs' complaints.

An order follows.

### *ORDER*

AND NOW, this 29th day of July, 1994:

1. Upon consideration of the motions of Wave Energy Systems, Inc. and Metrex Research Corporation to amend their answers, IT IS ORDERED that the Motions are GRANTED.

2. Upon consideration of the defendants' motions for summary judgment, IT IS ORDERED that the motions are GRANTED. Judgment is entered in favor of Wave Energy Systems, Inc. and Metrex Research Corporation and against the plaintiffs on all counts in Civil Action No. 92–3810. Judgment is granted in favor of Johnson & Johnson Medical, Inc. and against the plaintiffs on all counts in Civil Action No. 93–2660.

3. The Clerk is directed to close the dockets of the within-numbered actions for statistical purposes.