Sharon **SOWERS** and Harry **Sowers,**
**Her Husband, Plaintiffs,**

v.

**JOHNSON & JOHNSON MEDICAL, INC.,**
**Metrex Research Corporation, and Wave**
**Energy Systems, Inc., Defendants.**

**Civ. A. No. 93–CV–2342.**

United States District Court,
E.D. Pennsylvania.

Nov. 1, 1994.

Stuart J. Agins, Philadelphia, PA, for plaintiffs.

Bernard J. Smolens and Kevin A. Marks, Philadelphia, PA, for defendant Johnson & Johnson Medical, Inc.

Michael J. Dunn and Cynthia M. Philo, Philadelphia, PA, for defendant Metrex Research Corp.

Mark N. Cohen, Philadelphia, PA, for defendant Wave Energy Systems, Inc.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

By motions filed on September 8, 9, and 30, 1994, the defendants in this products liability action filed on May 3, 1994 have each moved for summary judgment, asserting that § 136v(b) of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y, preempts plaintiffs' claims. This court exercises jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), and venue lies in this district pursuant to 28 U.S.C. § 1391(a)(2). For the reasons stated below, we will grant defendants' motions.

## I. STANDARD OF REVIEW

 Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

"The party moving for summary judgment must demonstrate that, under the undisputed facts, the non-movant has failed to introduce evidence supporting a necessary element of his case." *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1243 (3d Cir.1989). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 n. 3, 106 S.Ct. 2548, 2552 n. 3, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## II. FACTUAL BACKGROUND

No party disputes the following facts. From 1973 to January 1992 plaintiff Sharon Sowers, a registered nurse, worked at Lancaster General Hospital in Lancaster, Pennsylvania. Her duties there included sterilizing medical equipment using various cold sterilant/disinfectant products containing the chemical glutaraldehyde. These sterilant/disinfectants were supplied, distributed, manufactured and/or sold by the defendant corporations Johnson & Johnson Medical, Inc. ("Johnson & Johnson"), Metrex Research Corporation ("Metrex"), and Wave Energy Systems ("Wave"). Each product is a "pesticide" within the meaning of FIFRA, and, at all relevant times, was registered with and bore a label approved by the Environmental Protection Agency ("EPA") as required by FIFRA.

Ms. Sowers now claims that she suffered personal injury as a result of her exposure to the defendants' products. In the first three counts of her complaint, she advances theories of negligence, strict liability, and breach of express and/or implied warranties. In the fourth count, her husband, plaintiff Harry Sowers, brings a claim for loss of consortium.

## III. DISCUSSION

FIFRA requires virtually all pesticides distributed or sold in the United States to be registered with the EPA. *See* 7 U.S.C. § 136a(a). As part of the registration process, an applicant must submit for EPA approval "a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use." *Id.* at § 136a(c)(1). Before registering a pesticide, the EPA must first determine that its composition is such as to warrant the proposed claims for it, that its labeling complies with the requirements of FIFRA, and that it will perform its intended function "without unreasonable adverse effects on the environment." *See id.* at § 136a(c)(5). "The term 'unreasonable adverse effects on the environment' means any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." *Id.* at § 136(bb). Once the EPA registers a pesticide and approves its label, that label may not be changed without prior EPA approval, except that certain minor changes may be made after merely notifying the EPA. *See id.* at § 136a(f).

Section 136v of FIFRA, entitled "Authority of States," provides in relevant part:

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

In their motions for summary judgment, defendants contend that part (b) of this section preempts plaintiffs' claims.

■ Before addressing the specific question of whether § 136v(b) preempts plaintiffs' claims, we must first decide the more general question of whether FIFRA's prohibition against state imposition of "any requirements" for labeling or packaging encompasses the type of "requirements" imposed by state common law causes of action. Defendants contend that it does. Plaintiffs, on the other hand, advance a much narrower reading of the section. They urge the Court to adopt the reasoning of *Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), in which the D.C. Circuit held that § 136v(b) does not preempt common law actions, but instead merely prohibits states from directly ordering changes in EPA-approved labels, as for example, through injunctions or statutory regulation of pesticide labeling. The Court finds that the applicable law supports defendants' reading.

The Supreme Court has not yet defined the preemptive scope of § 136v(b), and neither has the Third Circuit. In 1989, a judge of our Court ruled that FIFRA *did not* preempt common law tort claims. *See Cox v. Velsicol Chemical Corp.,* 704 F.Supp. 85 (E.D.Pa.1989). However, the Supreme Court subsequently held that a similar provision in the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331–1340 ("the Cigarette Act"), was broad enough to encompass common law claims that fell within its scope. *See Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion).

The Supreme Court has since indicated that its holding in *Cipollone* applies in the context of FIFRA preemption.[1] Also, the Third Circuit has applied the reasoning of *Cipollone* in determining the preemptive ef-

fect of a provision similar to § 136v(b) of FIFRA. *See Gile v. Optical Radiation Corp.,* 22 F.3d 540 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994) (holding that § 360k(a) of the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. 360c, *et seq.,* expressly preempted plaintiff's common law tort claims). Under these circumstances, the Court finds it appropriate to reexamine its holding in *Cox* as to the preemptive effect of § 136v(b). Indeed, in a "sister case" to the one at bar, Chief Judge Cahn of this Court followed this approach and, after considering the *Cipollone* opinion, held that § 136v(b) *does* preempt certain common law claims. *See Kenepp v. American Edwards Laboratories, et al.,* 859 F.Supp. 809 (E.D.Pa.1994). We reach the same conclusion.

■ The principle that state law which conflicts with federal law is "without effect" stems from Article VI of the Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2; *see also Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617. Preemption may be expressly stated in the terms of a statute or "implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In either case, however, Congressional intent provides the "ultimate touchstone" of preemption analysis. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617 (citations omitted). Accordingly, "[w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,'" the express language of the provi-

---

1. At the time *Cipollone* was decided, petitions for certiorari were pending in two circuit court decisions which had interpreted the preemptive scope of § 136v(b) of FIFRA. The Supreme Court vacated the judgments in both and remanded the cases for reconsideration in light of *Cipollone. See Papas v. Zoecon Corp.,* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992)

(remanding *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir.1991) (*"Papas I"*)); *Arkansas–Platte & Gulf Partnership v. Dow Chem. Co.,* —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992) (remanding *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 959 F.2d 158 (10th Cir. 1992) (*"Arkansas–Platte I"*)).

sion entirely governs the statute's pre-emptive scope. *Id.* at ——, 112 S.Ct. at 2618 (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 505, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)).

In *Cipollone,* a smoker who eventually died of lung cancer sued several cigarette manufacturers under various state common law causes of action. The cigarette manufacturers contended that the following language in the Cigarette Act preempted plaintiff's claims:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

The Supreme Court agreed that this language was broad enough to preempt common law tort claims. *Cipollone,* —— U.S. at ——–-——, 112 S.Ct. at 2619–21.[2] In so holding, the Court emphasized that "the phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Id.* at ——, 112 S.Ct. at 2620. The Court rejected the petitioner's argument that the statute preempted only state statutes, injunctions, and executive pronouncements, noting that " '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, and indeed is designed to be, a potent method of governing conduct and controlling policy.' " *Id.* (quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)).

With *Cipollone* as our guide, we now turn to the question of whether FIFRA's preemptive scope encompasses common law claims. As an initial matter, we find that § 136v provides "a reliable indicium of congressional intent with respect to state authority." *See*

*Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618. We note that Congress has entitled § 136v "Authority of States" and that it contains an explicit statutory statement of the permissible bounds of state activity, granting the states authority as to the sale and use of pesticides, *see* 7 U.S.C. § 136v(a), while limiting their authority as to labeling and packaging, *see* 7 U.S.C. § 136v(b). Furthermore, we find nothing in the other provisions of FIFRA which would offer cause to look beyond § 136v in determining the statute's preemptive effect. Therefore, as *Cipollone* mandates, we will focus our analysis of the preemptive scope of FIFRA on the express language of that provision. *See* —— U.S. at ——, 112 S.Ct. at 2618.

In order to prevail on their argument that FIFRA does not preempt common law tort claims, plaintiffs would have to show that FIFRA's preemptive language sweeps less broadly than the language at issue in *Cipollone. See Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir.1993) ("In order to prevail in the wake of *Cipollone,* then, [plaintiff] would have to show that FIFRA's preemption language is less sweeping than the language of the 1969 Cigarette Act."). Comparing the preemptive language of FIFRA to that of the Cigarette Act, this Court can find no meaningful distinction between "[a] State shall not impose or continue in effect any requirements" on the one hand and "[n]o requirement or prohibition ... shall be imposed under State law" on the other. *See id.* (examining the two phrases and concluding that "[n]ot even the most dedicated hairsplitter could distinguish these statements"); *King v. E.I. Dupont De Nemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993) (concluding that the two provisions are "virtually indistinguishable"); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.) ("*Arkansas–Platte II* "), *cert. denied, Arkansas–Platte & Gulf Partnership v. Dow Chem. Co.,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) (stating that FIFRA's

---

**2.** Although only three other Justices joined in this part of Justice Stevens' opinion, Justice Scalia's separate opinion, joined by Justice Thomas, also found that the Cigarette Act preempted com-

mon law tort claims. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2634 (Scalia, J., concurring in judgment in part and dissenting in part).

preemptive language is "as inclusive" as that of the Cigarette Act and holding that there is "no difference between the operative effect of the two acts"). Accordingly, we hold that, like the Cigarette Act, FIFRA preempts state common law actions.

In support of our holding, we note that each of the six Circuit Courts which has considered the issue post-*Cipollone* has concluded that the preemptive scope of § 136v(b) encompasses state common law actions. *See MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024 (5th Cir.1994); *King v. E.I. Dupont De Nemours & Co.*, 996 F.2d at 1349; *Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir.1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d at 371; *Arkansas–Platte II*, 981 F.2d at 1179; *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.) ("*Papas II*"), *cert. denied*, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). As mentioned above, Chief Judge Cahn of this Court also came to this conclusion. *See Kenepp*, 859 F.Supp. at 815.

We decline plaintiffs' invitation to adopt the pre-*Cipollone* holding of *Ferebee*. To begin with, *Ferebee* employed an implied preemption analysis, whereas the Supreme Court has indicated that the express preemption analysis employed in *Cipollone* applies to § 136v(b) of FIFRA. Moreover, *Ferebee*'s holding was based in part on the D.C. Circuit's reasoning that, unlike direct regulation, state common law tort actions do not necessarily conflict with federal labeling law because they do not require defendants to change their labels, leaving them free to choose to pay damage awards instead. *See* 736 F.2d at 1541. The Supreme Court has apparently rejected the suggestion that this distinction warrants a conclusion that positive enactments impose "requirements or prohibitions" while common law rules do not. *See Cipollone*, —— U.S. at ——, 112 S.Ct. at 2620 (explaining that like the duties imposed by positive enactments, the duties imposed by common law rules are also "requirements or prohibitions"). Accordingly, we agree with the other courts which have found that

*Ferebee* is of questionable validity after *Cipollone*. *See, e.g., King v. E.I. DuPont De Nemours & Co.*, 996 F.2d at 1351 (noting that after *Cipollone* and the subsequent circuit court cases interpreting § 136v(b) it was "impossible to predict" whether the D.C. Circuit would still follow *Ferebee*); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1424 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993) ("[W]e do not believe the [preemption] analysis [in *Ferebee*] can be said to have survived *Cipollone*...."); *Shaw v. Dow Brands, Inc.*, 994 F.2d at 370 (finding that plaintiff's argument based on *Ferebee* "evaporated last summer when the Supreme Court decided *Cipollone*"). We therefore decline to follow its holding.

The Court also rejects plaintiffs' argument that the absence of the phrase "state law" from § 136v(b) creates a "significant and compelling" difference between that provision and the section of the Cigarette Act at issue in *Cipollone*.[3] Plaintiffs apparently contend that this "difference" warrants the conclusion that unlike the Cigarette Act, FIFRA does not bar state common law actions, but only positive enactments such as regulations or injunctions. We agree with Chief Judge Cahn's finding that "[there exists] no functional distinction between the [preemptive provisions of the two acts]. Moreover, the *Cipollone* Court did not suggest that the phrase 'state law' had any magic word status such that Congress' failure to include it in other statutes would be fatal to a preemption argument." *Kenepp*, 859 F.Supp. at 814. Rather, as stated above, the Court focused on the phrase "[n]o requirement or prohibition," concluding that it "easily encompass[ed]" common law rules. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2620. Consequently, we find that despite the absence of the term "state law" from § 136v(b), FIFRA's prohibition against "any requirements ... in addition to or different from those required under this subchapter" is broad enough to preempt state common law actions.

**3.** *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to Defendant Wave Energy Systems, Inc.'s Motion for Summary Judgment at 9.

■ Finally, we reject plaintiffs' argument that because the Cigarette Act mandated nationally-uniform, specifically-worded warnings, whereas FIFRA permits companies to suggest their own wording and allows for many different labels for different products, one cannot infer from FIFRA that Congress intended to preserve labeling uniformity by preempting state law. Again we agree with Chief Judge Cahn's assessment in *Kenepp*. *See* 859 F.Supp. at 814–15. When conducting an implied preemption analysis, a court may properly infer Congress's preemptive intent from a statute's apparent purpose to promote uniformity. *See Jones v. Rath Packing Co.*, 430 U.S. at 525, 97 S.Ct. at 1309. Because FIFRA contains an express preemption provision, however, " 'there is no need to infer congressional intent to preempt state laws from the substantive provisions' of the legislation." *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618 (quoting *California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987) (opinion of Marshall, J.)). Thus, the question of whether or not provisions of FIFRA other than § 136v(b) are intended to produce nationally-uniform labeling is irrelevant to our inquiry.[4]

Having held that the preemptive scope of § 136v(b) encompasses state common law actions, we next address the question of which of plaintiffs' claims in particular are preempted. We find that § 136v(b) preempts plaintiffs' negligence, strict liability, and breach of implied warranty claims, but not their breach of express warranty claim. On that claim, we grant defendants summary judgment on other grounds.

■ As an initial matter, we note that although the complaint contains allegations based both on defects in the product itself and on inadequate labeling/failure to warn, discovery is now over and plaintiffs have acknowledged that the crux of their complaint "involves inadequate warnings as to the use and exposure to glutaraldehyde solution."[5] In *Cipollone*, plaintiff/petitioner raised two such failure to warn claims, one based on negligence and one based on strict liability. The Supreme Court held that "insofar as claims under either failure to warn require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted [by the Cigarette Act]." *Cipollone*, —— U.S. at ——–——, 112 S.Ct. at 2621–22.

Applying this analysis to the instant complaint and the language of FIFRA, we agree with the Eleventh Circuit that plaintiffs' claims,

> like the failure to warn claims in *Cipollone*, require the finder of fact to determine whether, under state law, [defendants] adequately labelled and packaged [their] product[s]. This inquiry is precisely what section 136v forbids. FIFRA denies states the authority to require that pesticide manufacturers conform to a state law standard of care in their labelling and packaging practices.

*Papas II*, 985 F.2d at 518. Here, in order to prevail on their negligence claim, plaintiffs would have to prove that defendants failed to provide adequate warnings or instructions which a reasonable seller or supplier would have provided. *See Harford Mut. Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 578 A.2d 492, 498–99 (1990).[6] Similarly, in order to prevail on their strict liability claim, plaintiffs

---

4. In any event, we find that plaintiffs point out a distinction without a difference. Although it is true that FIFRA does not create a specifically-worded uniform warning that must accompany every pesticide nationwide, the statute does indicate a Congressional intent to create "uniformity" in that once a label for a specific product is approved by the EPA, that same label may be used in every state. Permitting individual states to superimpose their own labeling requirements through common law rules would as much destroy this type of uniformity as it would the type of uniformity created under the Cigarette Act.

5. Plaintiff's Memorandum of Law in Opposition to Defendant Wave Energy Systems, Inc.'s Motion for Summary Judgment at 2. Moreover, plaintiffs have provided absolutely no evidence to support their design defect theories. Accordingly, the court finds that plaintiffs have waived their right to proceed on strict liability or negligence claims other than those based upon a failure to warn.

6. Federal courts sitting in diversity "must apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

would have to show that the warnings and instructions given were not adequate to inform the user of the possible risks and inherent limitations of the product. *See Pegg v. General Motors Corp.,* 258 Pa.Super. 59, 391 A.2d 1074, 1083 (1978). Finally, plaintiffs' breach of implied warranty claims would require proof that, because of their inadequate labels, the products at issue were not merchantable, fit for use, and/or fit for a particular purpose. *See* 13 Pa.C.S. § 2314. It is undisputed that the products at issue here bore labels and packaging approved by the EPA under FIFRA. Therefore, if plaintiffs were to prevail on any of these claims that defendants failed to provide adequate warnings or labels, the additional warnings required would necessarily constitute labeling or packaging requirements "in addition to or different from" those required by the EPA. *See MacDonald,* 27 F.3d at 1025 n. 4; *King v. E.I. DuPont De Nemours,* 996 F.2d at 1346; *Worm v. American Cyanamid Co.,* 5 F.3d at 748 ("Because the language on the label was determined by the EPA to comply with the federal standards, to argue that the warnings on the label are inadequate is to seek to hold the label to a standard different from the federal one."); *Arkansas–Platte II,* 981 F.2d at 1179 ("To the extent that state tort claims in this case require a showing that defendants' labeling and packaging should have included additional, different, or alternatively state warnings from those required under FIFRA, they would be expressly preempted."). Consequently, we find that § 136v(b) preempts Counts I and II of the complaint, as well as the breach of implied warranty claim stated in Count III. *See Worm v. American Cyanamid Co.,* 5 F.3d 744 (FIFRA preempts negligent failure to warn claims); *King v. E.I. DuPont De Nemours & Co.,* 996 F.2d 1346 (FIFRA preempts negligence and strict liability claims based on failure to warn); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364 (FIFRA preempts negligence and strict liability claims based on failure to warn); *Papas II,* 985 F.2d 516 (holding that FIFRA preempted strict liability and negligence and breach of implied warranty claims

based on failure to warn); *Arkansas–Platte II,* 981 F.2d 1177 (FIFRA preempts negligent failure to warn claims).

■ We reject plaintiffs' argument that FIFRA's preemption is limited to "labels" and "labeling" and does not extend to claims based on non-attached, non-accompanying documents and statements such as defendants' material safety data sheets or their advertising and promotional material. "[A]ny claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging." *Papas II,* 985 F.2d at 519; *see also Worm v. American Cyanamid Co.,* 5 F.3d at 748 ("To allow the Worms to argue that the warning language which appears on point-of-sale or other promotional material is inadequate when that language is identical to that approved by the EPA would in effect allow the establishment of an additional or different state law requirement concerning adequate warning language."). Because failure to warn claims based on the material safety data sheets or advertising materials necessarily imply that the EPA-approved packaging and/or labeling failed to warn the user, we conclude that they too are preempted by FIFRA.

■ We now turn to plaintiffs' breach of express warranty claim. Under Pennsylvania law, the implied warranties of merchantability and fitness for a particular purpose arise by operation of law. *See Altronics of Bethlehem, Inc. v. Repco, Inc.,* 957 F.2d 1102, 1105 (3d Cir.1992). An express warranty, however, arises out of the representations or promises of the seller. *See* 13 Pa. C.S. § 2313. Thus, as the Supreme Court pointed out in *Cipollone,* "... the 'requirements' imposed by an express warranty are not 'imposed under state law,' but rather imposed *by the warrantor*." —— U.S. at ——, 112 S.Ct. at 2622 (emphasis original). Since FIFRA only prohibits a state from "impos[ing] or continu[ing] in effect" require-

1188 (1938)). The parties do not dispute that Pennsylvania law governs this action, and we

therefore assume that Pennsylvania law applies.

ments in addition to or different from FIFRA's, we find, as did Chief Judge Cahn in *Kenepp,* that it does not prohibit a state from giving effect to an express warranty voluntarily undertaken by the seller. *See Kenepp,* 859 F.Supp. at 817; *see also Papas II,* 985 F.2d at 519–20 (discussing FIFRA's preemption of implied vs. express warranty claims).

 Although plaintiffs' express warranty claims are not preempted, they nevertheless fail as a matter of law. Plaintiffs apparently base these claims on defendants' labels, material safety data sheets, and promotional materials. With respect to the labels, we note, as Chief Judge Cahn did in *Kenepp,* that an express warranty must be "directed at consumers in order to induce purchases of the product." 859 F.Supp. at 817 (citing *Silverman v. Samuel Mallinger Co.,* 375 Pa. 422, 100 A.2d 715, 719 (1953)). Since the labels at issue are required by law under FIFRA, we can infer that they were not directed at consumers and that inducing purchases was not their purpose, and that they were therefore not a part of the "basis of the bargain" between the defendants and potential buyers. *See id.* at 817–18; 13 Pa.C.S. § 2313.

As for the material safety data sheets, we note that those of Metrex and Wave Energy contain specific warranty disclaimers. In any event, like Chief Judge Cahn, we can find no statements in any of the material safety data sheets or the various promotional materials submitted which could possibly constitute an express warranty as to product safety. *See Kenepp,* 859 F.Supp. at 817. Accordingly, we will grant summary judgment in favor of defendants on the express warranty claim.

Finally, we note that since we have granted the defendants summary judgment as to each of the claims in Counts I–III, Mr. Sowers' claim for loss of consortium in Count IV must fail as well. Summary judgment will therefore be entered for defendants on all counts.

An appropriate order follows.

## ORDER

AND NOW, this 1st day of November, 1994, after full consideration of the motions for summary judgment filed by Johnson & Johnson Medical, Inc. on September 8, 1994, Wave Energy Systems, Inc. on September 9, 1994, and Metrex Research Corporation on September 30, 1994, as well as plaintiffs' responses thereto filed on September 22 and 23 and October 14, 1994, respectively, it is hereby ORDERED that:

1. Defendants' motions are GRANTED. Judgment is entered in favor of Johnson & Johnson Medical, Inc., Wave Energy Systems, Inc., and Metrex Research Corporation, and against plaintiffs Sharon and Harry Sowers on all counts of the complaint, and

2. This case is closed.