### David W. COUTURE

v.

**DOW CHEMICAL U.S.A., an operating unit of The Dow Chemical Company; Sandoz Crop Protection Corporation; Platte Chemical Co., Inc.; American Cyanamid Company; Loveland Industries, Inc.; E.I. Dupont de Nemours & Co.; Monsanto Company; and West–Chem, Inc., d/b/a West Chem Agricultural.**

No. CV–91–087–BU.

United States District Court, D. Montana, Butte Division.

Oct. 2, 1992.

Gary L. Graham, Missoula, Mont., for Sandoz Crop.

Robert M. Carlson, Corette, Pohlman, et al., Butte, Mont., for Dow Chem. & Amer. Cyanamid Co.

Robert Planalp, Landoe, Brown, Planalp Braaksma P.C., Bozeman, Mont., for Westchem, Loveland Indus. & Platte Chemical.

## OPINION

HATFIELD, Chief Judge.

In this diversity action, David Couture alleges the T-cell lymphoma from which he is afflicted was caused by his exposure to herbicides manufactured and marketed by the defendant chemical companies. Couture's complaint advances several bases of recovery predicated upon various theories of tort law recognized in the State of Montana, including the theory of strict liability in tort. The strict liability claim is predicated upon the defendants' alleged failure to adequately warn Couture of the dangers to his physical well-being associated with his use of the herbicides.

The defendants move for partial summary judgment upon Couture's claim for relief that is predicated upon the defendants' alleged failure to provide Couture, and other users, proper warnings regarding the use of their respective herbicides. The defendants advocate the position that any state common law tort claim predicated upon an alleged inadequacy of the warnings attendant the defendants' herbicides is preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") and corresponding regulations. *See*, 7 U.S.C. §§ 136-136y; 40 C.F.R. §§ 152-86 (1990).[1,2]

### I.

▇ The issue presented is whether FIFRA operates to preempt state common law claims for relief predicated upon an

David M. McLean, Ray J. Dayton, Knight, Dahood, McLean & Everett, Anaconda, Mont., for Couture.

1. Under Montana law, the manufacturer or seller of a product who knows or should know of non-obvious dangers inherent in the foreseeable use of the product may be held liable for failing to adequately warn potential users of those dangers. *See, Streich v. Hilton–Davis, a Div. of Sterling Drug, Inc.*, 214 Mont. 44, 692 P.2d 440 (1984); *Rost v. C.F. & I. Steel Corp.*, 189 Mont. 485, 616 P.2d 383 (1980).

2. It is undisputed that the herbicides at issue were properly registered and labeled in accordance with the mandate of FIFRA.

alleged inadequacy of warning attendant to a herbicide that has been registered with the Environmental Protection Agency in accordance with FIFRA.

The defendants acknowledge this court has previously rejected the position that state common law tort claims are preempted by FIFRA. *See, Montana Pole & Treating Plant v. I.F. Laucks,* 775 F.Supp. 1339, 1342–1345 (D.Mont.1991). The defendants ask the court to retract its holding in *Montana Pole* and find that FIFRA preempts Couture from prosecuting the common law tort claims advanced by his complaint and entitles the defendants to summary judgment as a matter of law. The court, however, declines the defendants' invitation and reaffirms its holding in *Montana Pole.*

In *Montana Pole,* this court, cognizant of the split extant among lower federal courts upon the issue, followed the rationale expressed by the D.C. Circuit Court of Appeals in *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). The court in *Ferebee* affirmed a jury verdict holding a manufacturer of the herbicide Paraquat liable under Maryland law for failure to warn of possible long-term health effects from exposure to the manufacturer's product. The court concluded that FIFRA neither expressly, nor by implication, preempted state common law tort actions. 736 F.2d at 1542. Adopting the rationale of *Ferebee,* this court concluded that "states are free to regulate, through common law remedies, the use and sale of [EPA-registered] pesticides." 775 F.Supp. at 1344.

There are three facets to the defendants' argument. First, they assert that the rationale of *Ferebee,* more particularly the "choice of reaction" analysis upon which the rationale is based, has been implicitly rejected by the United States Supreme Court in *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Second, they contend that *dictum* expressed by the Supreme Court in *Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), stands for the proposition that FIFRA does preempt state labeling requirements for pesticides. Finally, they suggest that this court should join the majority of federal circuit courts which have addressed the issue of whether FIFRA preempts state common law tort claims and have concluded that it does. The court finds none of the arguments presented by the defendants to be particularly compelling.

## II.

*Ouellette* involved the preemptive scope of the Clean Water Act, 86 STAT. 816, as amended, 33 U.S.C. §§ 1251 *et seq.* and, specifically, the question of whether "the Act pre-empts a common-law nuisance suit filed in a Vermont court under Vermont law, when the source of the alleged injury is located in New York." 479 U.S. at 483, 107 S.Ct. at 807. *Ouellette* did not conclude that the Clean Water Act preempted all common law nuisance suits concerning water pollution, but held only that the Act preempts the common law of an affected state to the extent that state law may not serve as a basis for imposing liability upon an out-of-state source. 479 U.S. at 491–494, 107 S.Ct. at 811–813. The holding of the Court was compelled by the nature of the regulatory framework of the Clean Water Act which, among other things, "makes it clear that affected States occupy a subordinate position to source States in the federal regulatory program." 479 U.S. at 491, 107 S.Ct. at 811. The Court's holding was necessary to preclude the affected state from regulating the conduct of out-of-state sources. 479 U.S. at 495, 107 S.Ct. at 813. The Court viewed as "extraordinary" the suggestion that Congress intended to tolerate common-law suits that would undermine the extensive regulatory structure of the Clean Water Act. 479 U.S. at 497, 107 S.Ct. at 814. Placed in their proper factual context, the observations of the Court in *Ouellette* do not, contrary to the suggestion of the defendants, constitute a rejection of the "choice of reaction" analysis critical to the rationale of *Ferebee. See, Burke v. Dow Chemical Co.,* 797 F.Supp. 1128 (E.D.N.Y.1992).

### III.

The defendants cite the court to the decision of the Tenth Circuit Court of Appeals in *Arkansas–Platte & Gulf Partnership v. Van Waters & Rodgers, Inc.*, 959 F.2d 158 (10th Cir.1992), *petition for cert. filed*, 61 L.W. 3181 (U.S. July 30, 1992) (No. 92–203), wherein the court specifically rejected the "choice-of-reaction" analysis of *Ferebee*, and held that FIFRA preempts state tort actions based on labeling and failure to warn. 959 F.2d at 162. The defendants hasten to note that the court in *Arkansas–Platte* viewed *Montana Pole's* reliance on *Mortier* to be in error in that it failed to consider the Supreme Court's "distinction between preemption of state regulation of the sale and use of pesticides, and the state's authority over labeling." 959 F.2d at 163, n. 6. The criticism is understandable in view of the Tenth Circuit's conclusion that Congress has occupied the "sub-field" of pesticide labeling, 959 F.2d at 163–64; a conclusion based essentially upon the express language of 7 U.S.C. § 136v(b). The Tenth Circuit viewed a state's imposition of tort liability based upon a failure to warn theory as tantamount to a state's imposition of a labeling or packaging requirement within the meaning of section 136v(b). *Id.*

In *Montana Pole*, this court concluded that the imposition of tort liability upon a failure to warn theory did not constitute the imposition of a labeling or packaging requirement. Rather, the court concluded the imposition of such tort liability constituted regulation of the use and sale of pesticides, a matter expressly reserved to the states pursuant to the "savings clause". 7 U.S.C. § 136v(a). Recognizing that in areas which have been traditionally reserved to the states, like tort law, preemption is not to be lightly inferred, the

court refused to read section 136v(b) so broadly as to exclude the several states from imposing tort liability upon the manufacturer of a product bearing an EPA–approved label. 775 F.Supp. at 1344–45. Rather, the court viewed the imposition of tort liability upon a failure to warn theory as a legitimate means whereby a state could regulate the use and sale of a product. *Id.*

The court finds its analysis to be consonant with the recent decision of the United States Supreme Court in *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407. *Cipollone* addressed the questions of whether the federal Cigarette Labeling Act of 1965, or its successor, the Public Health Cigarette Smoking Act of 1969, operate to preempt state common law claims against cigarette manufacturers. —— U.S. at ——, 112 S.Ct. at 2613–14, 120 L.Ed.2d at 418.[3] The 1965 Act, the Court concluded, only preempted state and federal rule-making bodies from mandating particular cautionary statements, but did not preempt state law damage claims. At ——, ——, 112 S.Ct. at 2618–2619, 2624, 120 L.Ed.2d at 424, 431. The 1969 Act, however, was found by the Court to have preempted state common law claims "based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in respondent's advertising or promotions; [but the Act] does not preempt [state law claims] based on express warranty, intentional fraud and misrepresentation or conspiracy." At ——–——, 112 S.Ct. at 2625, 120 L.Ed.2d at 431–432.

Of particular significance to the present preemption analysis is the discussion of the

---

3. The preemptive scope of the 1965 Act and the 1969 Act was found by the Court to be governed entirely by the express language in section five of each Act.

The 1965 Act contained the following preemption language:

(a) No statement relating to smoking and health, other than the statement required by section four of this Act, shall be required on any cigarette package.

(b) No statement relating to smoking and health shall be required in the advertising of

any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

The 1969 Act, in turn, utilized the following preemption language:

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Court in *Cipollone* of the general principles of preemption analysis. Reiterating that the "ultimate touchstone" of preemption analysis is the purpose of Congress, the Court stated:

> When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' *Malone v. White Motor Corp.* 435 U.S. 497, 505, 55 L.Ed.2d 443, 98 S.Ct. 1185 [1190 (1978)], 'there is no need to infer congressional intent to preempt state laws from the substantive provisions' of the legislation. *California Federal Savings & Loan Assn. v. Guerra,* 479 U.S. 272, 282, 93 L.Ed.2d 613, 107 S.Ct. 683 [690] (1987) (opinion of Marshall, J.).

At ——, 112 S.Ct. at 2618, 120 L.Ed.2d at 423. Consequently, the Court emphasized that when Congress enacts a provision which expressly defines the preemptive reach of a statute, it must be implied that matters beyond that reach are not preempted. *Id.*

In its enactment of FIFRA, Congress expressly defined the preemptive reach of FIFRA and, accordingly, the extent to which it intended to supersede an obvious historic police power of the States. Congress defined the preemptive reach in FIFRA in the following language:

> (a) In General

> A State may regulate the sale or use of any federally registered pesticide ... in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

> (b) Uniformity

> Such States shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a), (b).

■ Affording section 136v(a), (b) the narrow construction mandated by the preemption analysis utilized in *Cipollone*, this court reaffirms its holding in *Montana Pole* that states are "free to regulate, through common law remedies, the use and sale of pesticides." 775 F.Supp. at 1344. In this court's opinion, the preemptive reach of 7 U.S.C. § 136v(a), (b), was expressly designed to preclude states' rule-making bodies from mandating labeling and packaging requirements different from those imposed by the EPA pursuant to FIFRA.

For purposes of preemption analysis, section 136v(b) is indistinguishable from section 5(b) of the Federal Cigarette Labeling and Advertising Act of 1965.[4]

The language of section 136v(b) can hardly be interpreted as providing "unambiguous evidence of a clear and manifest purpose of Congress to displace state sovereignty." *See, Cipollone,* —— U.S. at ——, 112 S.Ct. at 2625–26, 120 L.Ed.2d at 433 (Blackmun, J. concurring in part, concurring in the judgment in part, and dissenting in part). This court remains circumspect in applying a broad preemption analysis which would displace state law and would extinguish an individual's right under state law to pursue a common law damage action. *Cipollone,* when considered in light of the Court's preemption jurisprudence, mandates that caution.

## IV.

The final facet of the defendants' argument is of little compelling force. The holding of the Tenth Circuit Court of Appeals in *Arkansas–Platte & Gulf Partnership* is clearly at odds with this court's preemption analysis. The persuasive effect of the rationale expressed in *Arkan-*

---

**4.** One other court that has, subsequent to *Cipollone,* addressed the preemptive reach of FIFRA has reached the same conclusion. *See, Burke v. Dow Chemical Co., supra.* The court in *Burke* held that while FIFRA would preempt a claim that a defendant's products were mislabeled, it does not preempt state common law claims based upon a failure to warn theory of liability. *Id.* The court in *Burke* viewed the general savings clause set forth in section 136v(a), explicitly authorizing each state to "regulate the sale or use" of federally registered pesticides within its borders, as compelling an "especially cautious" preemption analysis. *Id.*

*sas–Platte & Gulf Partnership* has been further eroded by the Supreme Court's decision in *Cipollone.*[5] The court declines the defendants' invitation to adopt what the defendants characterize as a majority rule.

Therefore, for the reasons set forth herein, IT IS HEREBY ORDERED that the defendants' motions for partial summary judgment be, and the same hereby are, DENIED.

---

5. Defendant Monsanto Company suggests the court should certify the issue of whether FIFRA preempts state common law tort claims to the Ninth Circuit for interlocutory appeal. 28 U.S.C. § 1292(b). Again, the Supreme Court's decision in *Cipollone* counsels against certification of this action for an interlocutory appeal. In holding the Public Health Cigarette Smoking Act of 1969 preempted state common law claims based on a "failure to warn" theory of liability, the Court also recognized that the 1969 Act did not preempt common law claims based on an express warranty, intentional fraud and misrepresentation, or conspiracy. At ——, 112 S.Ct. at 2624–25, 120 L.Ed.2d at 431–32.

In the present case, Couture alleges several alternate bases of recovery. Consequently, the court is unable to conclude that an immediate appeal of the issue of whether FIFRA preempts common law claims predicated upon a "failure to warn" theory of liability would materially advance the ultimate termination of this litigation. Additionally, cognizant of the pendency of a petition for certiorari to the United States Supreme Court in *Arkansas–Platte & Gulf Partnership*, the court is confident the preemption issue will be resolved by the United States Supreme Court in order to resolve the obvious split extant between the circuit courts of appeal.