[No. 62323-6.   En Banc.   June 15, 1995.]

MICHAEL L. GOODWIN, ET AL., Respondents, v. HARRY BACON, ET AL., Appellants.

*Evans, Craven & Lackie, P.S.,* by *Philip J. Van de Veer* and *H. Terrence Lackie,* for appellant Sandoz Crop Protection.

*Nels A. Hansen* and Hansen Law Firm, for respondents.

*Stephen P. Larson* on behalf of Washington Defense Trial Lawyers, amicus curiae for appellants.

*Bryan P. Harnetiaux* and *Gregg L. Tinker* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondents.

DOLLIVER, J. — We accepted certification of this case

from the Court of Appeals to review a trial court ruling that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136v, does not preempt state negligence claims for failure to warn and inadequate label. We hold FIFRA does preempt state inadequate labeling and failure to warn claims to the extent they rely on a showing of inadequate labeling. We thus reverse the verdict of the trial court.

At issue are the FIFRA provisions permitting state regulation of sale and use of registered pesticides, but restricting state authority over labeling:

### § 136v. Authority of States

#### (a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

#### (b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a), (b).

FIFRA represents the primary federal tool regulating the effects of pesticides on health and the environment, including the use, sale, registration, and labeling of pesticides in both intrastate and interstate commerce. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991-93, 81 L. Ed. 2d 815, 104 S. Ct. 2862 (1984). To achieve this purpose, FIFRA grants the Environmental Protection Agency (EPA) authority over registration, labeling, and enforcement and mandates EPA registration of all pesticides distributed or sold in the United States. 7 U.S.C. § 136a(c)(5)(C), (D); 7 U.S.C. § 136a(a).

The EPA has created a detailed regulatory scheme of labeling requirements specifying color, placement, prominence, and certain content directives. 40 C.F.R. § 156. The

manufacturer designs and formulates the content of the label according to these restrictions, then files with the EPA a statement including the pesticide name, a complete copy of the label, directions for use, all claims made, and a full description of tests and results underlying such claims. 7 U.S.C. § 136a(c)(1)(B)-(D). The EPA reviews the submitted label and accompanying data to determine whether registration is permissible according to statutorily mandated findings regarding manufacturer's claims, use, effects, and labeling. 7 U.S.C. § 136a(c)(5). The EPA retains the power to pursue civil and criminal penalties against a manufacturer for inadequate labeling after registration. 7 U.S.C. §§ 136g(c)(1), 136j(a)(2)(G).

This case arose from a crop loss allegedly due to damage from Banvel, an herbicide manufactured by Defendant Sandoz Crop Protection Corporation (Sandoz). There is no dispute that Banvel is duly registered with an authorized EPA label. In 1989, Plaintiff Michael Goodwin leased 40 acres of land from Defendant/Cross-Claimant Henry Bacon (Bacon) to grow potatoes. In January or February 1990, Bacon, with Plaintiff's consent, corrected a blowing problem on 6 to 10 acres of the leased plot by spreading 1 to 3 inches of manure and grass clippings from Bacon's cattle operation. After Plaintiff planted his first potato crop in April 1990, the plants exhibited defects consistent with phenoxy damage caused by Banvel. Tests of manure and grass clippings on the plot discovered Banvel residue.

Plaintiff subsequently entered into a litigation/ settlement agreement with Farmers Insurance, Bacon's liability insurer, by which Farmers agreed to pay Plaintiff $50,000 and Plaintiff agreed to initiate litigation underwritten by Farmers against Defendants. On May 21, 1991, Plaintiff filed a complaint for damages against Defendants alleging negligence, including failure to properly label the Banvel and failure to warn of the use and effect of Banvel on other crops. Bacon filed a cross-claim against Sandoz for failure to label and failure to warn.

The trial court denied Sandoz's pretrial motion to

dismiss the inadequate label and failure to warn claims as preempted by FIFRA. The court also granted Bacon's motion in limine to exclude testimony regarding the litigation/settlement agreement on the availability of insurance, Bacon's underwriting of the litigation pursuant to the settlement, and the fact that Bacon's expert was an investigator sent by Farmers to study Bacon's loss.

The jury found Sandoz solely negligent and awarded Plaintiff $200,000, ultimately reduced to $120,457.52. Sandoz then filed an appeal assigning error to the trial court's pretrial rulings on FIFRA preemption and the insurance testimony. The Supreme Court accepted certification from the Court of Appeals as a companion to two other cases before the court addressing the preemptive scope of FIFRA: *All-Pure Chem. Co. v. White*, cause 61082-7, on review from Division Two, and *Hue v. Farmboy Spray Co.*, cause 62324-4, certified from Division Three. Washington State Trial Lawyers Association has filed an amicus brief in support of Plaintiff.

## I

### MOTION TO EXCLUDE TESTIMONY

■■ "Admission of evidence lies largely within the sound discretion of the trial court . . .". *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984). An abuse of discretion occurs only where "exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis*, 102 Wn.2d at 77. Sandoz argues the trial court's granting of Bacon's motion in limine amounted to an abuse of discretion because the testimony regarding insurance was admissible on two bases: under Superior Court Civil Rule (CR) 17 as necessary to show a real party in interest and under Rule of Evidence (ER) 411 as relevant to an issue other than fault. We disagree and affirm the ruling of the trial court excluding such testimony.

CR 17(a) demands: "Every action shall be prosecuted in the name of the real party in interest". Sandoz contends

the litigation/settlement agreement extinguished all of Bacon's liability, making Farmers the real party in interest. Preclusion of testimony regarding this agreement, claims Sandoz, deceived the jury as to the identity of the real party in interest and thereby prejudiced Sandoz. A close reading of the agreement, however, supports Plaintiff's characterization of its scope as limited to settlement of Plaintiff's claim against Farmers for dealing in bad faith while negotiating his losses: "WHEREAS, Farmers has denied that *any such promise* was extended to Goodwin, but has nevertheless agreed to pay to Goodwin the sum of $50,000 . . .". (Italics ours.) Clerk's Papers, at 27. Likewise, the agreement cannot be said to extinguish Bacon's liability, as it required commencement of a lawsuit against Bacon, nor did Plaintiff receive full payment, as he would receive any award beyond $50,000, whether from Bacon or Sandoz. Thus, Plaintiff remained the real party in interest, and CR 17 did not compel admission of the testimony.

Sandoz further submits ER 411 as a basis for admissibility. Evidence regarding availability of insurance is inadmissible on the issue of negligence pursuant to ER 411 unless relevant to an issue other than fault "such as proof of agency, ownership, or control, or bias or prejudice of a witness". ER 411. A court may allow testimony regarding insurance to overcome the bar of ER 411 only for a proper purpose, such as to rebut an element of a claim, *Kubista v. Romaine*, 87 Wn.2d 62, 69, 549 P.2d 491 (1976), or to show bias by advising the jury of a witness' relation to and interest in the case, *Moy Quon v. Furuya Co.*, 81 Wash. 526, 531-32, 143 P. 99 (1914).

In the present case, Sandoz has not shown the disputed testimony to be relevant to any element of a failure to warn claim. Likewise, the adversarial relationship between the codefendants was evident from Bacon's cross-claim against Sandoz, thereby advising the jury of the bias of all Bacon's and Plaintiff's witnesses against Sandoz. In addition, the likelihood of misleading the jury as to

the nature of the agreement and unduly prejudicing Plaintiff's case outweighed any probative value. *See* ER 403. As a result, we conclude the trial court fairly exercised its discretion in excluding the testimony regarding insurance.

## II
### FIFRA PREEMPTION

This court has not previously had the opportunity to address the preemptive scope of FIFRA's labeling provisions directly, nor has the United States Supreme Court. *See Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 615, 115 L. Ed. 2d 532, 111 S. Ct. 2476 (1991) (holding FIFRA does not preempt local use regulations); *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 207, 875 P.2d 1213 (1994) (holding Oregon law extinction of failure to warn claims obviates need to decide FIFRA preemption issue).

We find persuasive the majority of courts, including the seven federal circuits, that have addressed FIFRA preemption since the United States Supreme Court's explanation of express preemption analysis in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992), and that have held inadequate label and failure to warn claims are expressly preempted. *See, e.g., Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887 (8th Cir. 1994); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994); *King v. E.I. Du Pont De Nemours & Co.*, 996 F.2d 1346 (1st Cir.), *cert. dismissed*, 114 S. Ct. 490 (1993); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993) (*Worm* II); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993); *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177 (10th Cir.) (*Arkansas-Platte* II), *cert. denied*, 114 S. Ct. 60 (1993); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.) (*Papas* II), *cert. denied*, 114 S. Ct. 300 (1993); *but see Couture v. Dow Chem. U.S.A.*, 804 F. Supp. 1298 (D. Mont. 1992) (holding FIFRA preempts no common-law claims); *Burke v. Dow Chem. Co.*, 797 F. Supp. 1128 (E.D.N.Y. 1992) (holding FIFRA preempts inadequate label

claims but not claims for failure to warn through other channels). Upon engaging in our own analysis of the statutory language, we concur with this overwhelming authority and hold Plaintiff's claims for inadequate labeling and failure to warn are preempted.

## A

### Express Preemption Analysis

■ The doctrine of preemption derives from the supremacy clause of the United States Constitution:

> [T]he laws of the United States . . . shall be the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding.

U.S. Const. art. VI, cl. 2; *see Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 270, 797 P.2d 1148 (1990), *cert. denied*, 499 U.S. 961 (1991). Federal regulations possess an equally preemptive effect as federal statutes. *Hillsborough County., Fla. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 85 L. Ed. 2d 714, 105 S. Ct. 2371 (1985).

■■ Controlling any preemption analysis is a presumption against preemption: "the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress' ". *Cipollone*, 112 S. Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947)). The goal in preemption analysis is the determination of congressional purpose, "the ultimate touchstone" of the analytic endeavor. *Cipollone*, 112 S. Ct. at 2617 (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 55 L. Ed. 2d 443, 98 S. Ct. 1185, 1189 (1978)).

> Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' "

(Citations omitted.) *Cipollone,* 112 S. Ct. at 2617.

Unquestionably, FIFRA section 136v(b) expressly preempts state labeling requirements. Indeed, in *Wisconsin Pub. Intervenor v. Mortier, supra,* the United States Supreme Court acknowledged in dicta this preemption, holding FIFRA did not preempt local use regulations:

> As we have also made plain, local use permit regulations—unlike labeling or certification—do not fall within an area that FIFRA's "program" pre-empts or even plainly addresses. . . .

*Mortier,* 501 U.S. at 615.

█ The United States Supreme Court recently clarified in *Cipollone v. Liggett Group, Inc., supra,* the application of the preemption doctrine to a statute containing an express preemption clause similar to that in FIFRA:

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" . . . .

(Citations omitted.) *Cipollone,* 112 S. Ct. at 2618. In *Cipollone,* a majority of the Justices specifically rejected the implied preemption analysis of the lower court. The Court instead employed an express preemption analysis to hold certain common-law tort claims based on failure to warn and inadequate labeling were preempted by the Federal Cigarette Labeling and Advertising Act section 5(b), as amended by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1334(b). *Cipollone,* 112 S. Ct. at 2618.

The trial court in the present case denied Defendant's motion on the issue of preemption on the basis of the implied preemption analysis of pre-*Cipollone* cases now of questionable authority. Prior to *Cipollone,* courts generally analyzed FIFRA preemption of failure to warn claims under implied preemption theories and were split in hold-

ing such claims preempted, *see, e.g., Worm v. American Cyanamid Co. (Worm* I), 970 F.2d 1301 (4th Cir. 1992); or not preempted, *see, e.g., Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062 (1984).

The Supreme Court has indicated its disapproval of the use of implied preemption analysis in the FIFRA context; the Court vacated two lower court judgments holding FIFRA impliedly preempted state common-law failure to warn claims and remanded for reconsideration in light of *Cipollone. Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 959 F.2d 158 (10th Cir.), *cert. granted, vacated and remanded sub nom. Arkansas-Platte & Gulf Partnership v. Dow Chem. Co.,* 1992 U.S. LEXIS, at *6402, 121 L. Ed. 2d 235, 113 S. Ct. 314 (1992); *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir. 1991), *cert. granted, vacated and remanded sub nom. Papas v. Zoecon Corp.,* 1992 U.S. LEXIS, at *4577, 120 L. Ed. 2d 892, 112 S. Ct. 3020 (1992). Notably, on remand both courts held FIFRA expressly preempts state failure to warn claims. *Arkansas-Platte* II, 981 F.2d at 1179; *Papas II,* 985 F.2d at 520. Of the federal and state courts examining FIFRA preemption of failure to warn claims since *Cipollone,* only two have continued to utilize implied preemption analysis. *Davidson v. Velsicol Chem. Corp.,* 108 Nev. 591, 834 P.2d 931 (1992), *cert. denied,* 113 S. Ct. 1944 (1993); *Yowell v. Chevron Chem. Co.,* 836 S.W.2d 62, 66 (Mo. Ct. App. 1992) (finding no express preemption but holding FIFRA impliedly preempts failure to warn claims).

We proceed according to *Cipollone*'s express preemption analysis. *Cipollone* dictates that where Congress has spoken on the issue of preemption, the court need simply determine the extent of preemption; a court may only resort to implied preemption analysis where Congress has remained silent on the issue. *Cipollone,* 112 S. Ct. at 2625-26 (Blackmun, J., concurring in part, dissenting in part). Given the express preemption clause in FIFRA, the role of the court is to determine the extent of that preemption according to a two-step inquiry: (1) whether a court

may fairly interpret the scope of "requirement" to encompass common-law claims, or just positive law; and (2) if so, whether a failure to warn claim specifically imposes a labeling requirement. *See Cipollone*, 112 S. Ct. at 2621.

## B
### Scope of "Requirement"

*Cipollone* directs us to the plain language of the express preemption provision to determine whether FIFRA's scope encompasses common-law claims. Many courts have measured this scope by merely comparing the language of the FIFRA preemption provision to that held preempted in *Cipollone:* a decision that Congress did not intend to preempt any common-law claims here would require a finding that the language in section 136v(b) is narrower. *See Shaw*, 994 F.2d at 371; *Sowers v. Johnson & Johnson Med., Inc.*, 867 F. Supp. 306, 310 (E.D. Pa. 1994); *DerGazarian v. Dow Chem. Co.*, 836 F. Supp. 1429, 1446 (W.D. Ark. 1993).

*Cipollone* considered express preemption provisions in two versions of the cigarette act: While the 1965 cigarette act precluded state imposed "statements" in cigarette labeling and advertising, the 1969 act declares, "No requirement or prohibition . . . shall be imposed under State law . . .". 15 U.S.C. § 1334(b). The *Cipollone* Court concluded that although the narrow preemption of "statements" in the 1965 act did not extend to state common-law claims, the broader language of the 1969 act evinced an intent to expand the scope of preemption. *Cipollone*, 112 S. Ct. at 2619. By reading the plain language of the 1969 act, the Court discerned a congressional intent to preempt any state regulation, then explained that state regulation necessarily included both positive and common law. *Cipollone*, 112 S. Ct. at 2620. Likewise, the plain meaning of " 'imposed under State law' " was not limited to positive law. *Cipollone*, 112 S. Ct. at 2620.

The language in FIFRA's preemption clause, of course,

differs somewhat from that of the 1969 cigarette act, yet courts have dismissed these differences as irrelevant. *See Sowers*, 867 F. Supp. at 311; *Kenepp v. American Edwards Laboratories*, 859 F. Supp. 809, 814 (E.D. Pa. 1994) (rejecting argument that the 1969 cigarette act's "imposed under State law" is broader than FIFRA's simpler "no state" language); *Bingham v. Terminix Int'l Co.*, 850 F. Supp. 516, 521 & n.7 (S.D. Miss. 1994) (deciding omission of "prohibitions" from section 136v(b) does not narrow scope). Most courts have declared the language of FIFRA indistinguishable from that of the 1969 act, thereby mandating a conclusion that FIFRA's preemptive scope encompasses common-law claims. *King*, 996 F.2d at 1349; *Shaw*, 994 F.2d at 371; *Arkansas-Platte II*, 981 F.2d at 1179; *Sowers*, 867 F. Supp. at 309-11; *Trinity Mountain Seed Co. v. MSD Agvet*, 844 F. Supp. 597, 600 (D. Idaho 1994); *Levesque v. Miles Inc.*, 816 F. Supp. 61, 69 (D.N.H. 1993); *see also MacDonald*, 27 F.3d at 1024; *Worm II*, 5 F.3d at 749; *Papas II*, 985 F.2d at 518; *DerGazarian*, 836 F. Supp. at 1447. Other courts, while describing the scope of the FIFRA provision as somewhere in between the 1965 and 1969 cigarette acts, have still held "requirements" sufficiently expansive to preempt common-law claims. *DerGazarian*, 836 F. Supp. at 1446-47; *Burke*, 797 F. Supp. at 1140. Only one district court has held FIFRA more closely mirrors the 1965 cigarette act and therefore does not preempt any common-law tort claims. *Couture*, 804 F. Supp. at 1302.

█ More important than comparing the language of the two statutes, however, is divining the scope of section 136v(b) itself through *Cipollone*'s methods: what is the plain meaning of the language of FIFRA? The relevance of *Cipollone* is its definition of state regulation:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay

compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).

*Cipollone*, 112 S. Ct. at 2620. We are in accord with those courts that have avoided semantic wrangling altogether and simply stated that any distinction between positive law and common law is " 'illusory' ". *Worm* II, 5 F.3d at 748 (quoting *Worm* I, 970 F.2d at 1307); *see MacDonald*, 27 F.3d at 1024; *Arkansas-Platte* II, 981 F.2d at 1179; *Papas* II, 985 F.2d at 518; *DerGazarian*, 836 F. Supp. at 1447.

This interpretation of section 136v(b) is consistent with prior Washington case law defining the plain meaning of "requirements" to include both positive and common-law claims. *Berger*, 115 Wn.2d at 271. In *Berger*, the court considered an express preemption clause in the medical device amendments to the Food, Drug, and Cosmetic Act (MDA), similarly worded to that in FIFRA:

> [N]o state . . . may establish or continue in effect with respect to a device intended for human use any requirement . . .
>
> . . . which is different from, or in addition to, any requirement applicable under this chapter to the device, and . . . which relates to the safety or effectiveness of the device . . . .

*Berger*, 115 Wn.2d at 271 (quoting 21 U.S.C. § 360k(a)). *Berger* thus held the MDA expressly preempted a claim for inadequate labeling against a manufacturer whose tampon packaging complied with labeling requirements promulgated pursuant to the MDA. *Berger*, 115 Wn.2d at 271, 275.

We reject Plaintiff's contention that Congress' failure to invoke the words "common law claims" indicates an intent to limit FIFRA's preemptive scope to positive law. *Cipollone* carefully refused to adopt an identical argument that the inclusion of more exacting preemption language in other statutes held any meaning and went on to discern an intent to preempt common-law failure to warn claims

despite the omission of the specific words from the preemption provision. *Cipollone*, 112 S. Ct. at 2621 n.22. Other courts have arrived at the same conclusion that the omission from FIFRA is equally unpersuasive. *Kenepp*, 849 F. Supp. at 815; *see also Jenkins v. Amchem Prods., Inc.*, 1994 WL 701251, at *12.

We also reject Plaintiff's theory that "[s]uch state" in section 136v(b) limits the scope of the preemption clause by referring only to states "regulating" the sale or use of pesticides under section 136v(a). Rather, we agree with the reasoning of other courts regarding the relation between subsections (a) and (b):

> Subsection (a) . . . is a grant of authority to the states to regulate the "sale or use" of pesticides, not a limitation upon the preemptive effect of subsection (b). The word "Such" in subsection (b) does not limit to state regulation the state "requirements for labeling or packaging" which that section preempts.

*King*, 996 F.2d at 1349; *see also Jenkins*, 1994 WL 701251, at *13.

As in *Cipollone*, legislative history assures the reliability of section 136v(b)'s explicit language as an expression of congressional intent, as well as the appropriateness of our determination of that intent. *See Cipollone*, 112 S. Ct. at 2620. Although neither House nor Senate Reports on FIFRA evince any specific intent to preempt common-law preemption, legislative history is equally bare of intent to distinguish positive law from common-law claims. At the same time, we glean justification for our interpretation, as other courts have, from the emphasis in both the House and Senate to "completely preempt" state authority over federal labeling and packaging standards. *MacDonald*, 27 F.3d at 1025 n.3; *King*, 996 F.2d at 1350; *Jenkins*, 1994 WL 701251, at *11 (quoting H.R. Rep. No. 511, 92d Cong., 2d Sess. 1-2, 16 (1972); S. Rep. No. 92- 970, 92d Cong., 2d Sess. (1972); S. Rep. No. 92-838, 92d Cong., 2d Sess. 30 (1972)); *see also Papas II*, 985 F.2d at 517 & n.1.

With the support of *Berger, Cipollone,* and the majority

of courts considering FIFRA, we have reached a simple conclusion: section 136v(b) may preempt common-law claims because the plain meaning of "requirements" is "regulation", and "regulation" encompasses both positive and common law. Nonetheless, as *Cipollone* emphasized, a determination that Congress did not intend to limit the scope of a preemption clause to positive law does not mandate preclusion of all common-law claims. *Cipollone*, 112 S. Ct. at 2621. The court must consider each specific claim to determine whether the predicate legal duty constitutes, in this case, a requirement in addition to or different from that imposed by FIFRA or the EPA. *Cipollone*, 112 S. Ct. at 2621. Moreover, this analysis must proceed within the narrow constraints of the presumption against preemption. *Cipollone*, 112 S. Ct. at 2621.

C

Preemption of Inadequate Labeling

and Failure To Warn Claims

*Cipollone* decided that because a failure to warn claim required a showing that the manufacturer's promotional materials should have included additional or clearer warnings, the express preemption clause of the 1969 cigarette act barred such claims. *Cipollone*, 112 S. Ct. at 2621-22. At the same time, certain claims of negligence in testing in research and fraudulent misrepresentation in advertising were likewise preempted, while claims for false misrepresentation, express warranty, and conspiracy to misrepresent were permissible. *Cipollone*, 112 S. Ct. at 2622-25.

■ The *Cipollone* analysis holds true for FIFRA preemption: state common-law claims are expressly preempted to the extent they impose an additional or different labeling or packaging requirement. *See Cipollone*, 112 S. Ct. at 2621. Thus, we examine each of Plaintiff's claims and ask: does the underlying duty rely on a showing of inadequate labeling?

On this basis, Plaintiff's claim for inadequate labeling is

unquestionably barred. Nonetheless, Plaintiff suggests that even if FIFRA preempts an inadequate labeling claim, a separate claim for failure to warn through other channels, such as trade, sales, or advertisement, falls outside the preemptive scope. Thus, Plaintiff contends, its claim for failure to warn survives.

■ Only one court has accepted Plaintiff's distinction, deciding nonlabel failure to warn claims fell within FIFRA's savings clause permitting state regulation of pesticide use and sale. *Burke*, 797 F. Supp. at 1140-41; *see also Couture*, 804 F. Supp. at 1301. The flaw in this analysis is that any labeling regulation could be fairly characterized as a use regulation, whether positive or common law. The United States Supreme Court has explained in dicta the relation between FIFRA's savings clause and preemption clause:

> The specific grant of authority in § 136v(a) consequently does not serve to hand back to the States powers that the statute had impliedly usurped. Rather, it acts to ensure that the States could continue to regulate use and sales even where, such as with regard to the banning of [mislabeled] products, a narrow pre-emptive overlap might occur. . . .

*Mortier*, 501 U.S. at 614. Labeling regulation represents a subset of use regulation. *Mortier*'s permissible overlap allows states to ban EPA-registered pesticides, an authority unquestionably retained by the states. The explicit language of section 136v(b), however, completely preempts any state regulation of the labeling itself.

We agree with the majority of courts refusing to distinguish nonlabel failure to warn claims:

> [A]ny claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging. If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends. . . .

*Papas* II, 985 F.2d at 519; *see also Worm* II, 5 F.3d at 748;

*Sowers*, 867 F. Supp. at 313; *In re DuPont-Benlate Litig.*, 859 F. Supp. 619, 623 (D.P.R. 1994); *Pitts v. Dow Chem. Co.*, 859 F. Supp. 543, 549 (M.D. Ala. 1994); *Jenkins*, 1994 WL 701251, at *15. This analysis is borne out in the present case, where an examination of Plaintiff's failure to warn claim leads back to his reliance on a showing of inadequate labeling.

Plaintiff further asserts FIFRA preemption of inadequate label and failure to warn claims does not preclude other negligence claims. We also note amicus' complaint that our decision regarding FIFRA preemption leaves plaintiffs "remediless". Other courts preempting failure to warn claims have allowed other negligence claims to the extent they do not rely on a showing of inadequate labeling. *See, e.g., Worm* II, 5 F.3d at 747-49 (permitting claims for negligent testing and research based on defective product and express warranty claims not based on EPA-mandated statements); *but see Papas* II, 985 F.2d at 519-20 (holding FIFRA preempts implied warranty claims).

We need not reach the issue of preemption of other negligence claims directly, as no evidence exists in the record to support any claims other than inadequate labeling and failure to warn. Notwithstanding, we again emphasize the narrow scope of FIFRA's preemption. Only common-law claims relying on an underlying tort of inadequate labeling are preempted.

DURHAM, C.J., SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., and UTTER, J. Pro Tem., concur.