[No. 15593-5-III.   Division Three.   June 24, 1997.]

DON DIDIER, ET AL., *Appellants*, v. DREXEL CHEMICAL COMPANY, ET AL., *Respondents*.

*John S. Moore, Jr., John J. Carroll,* and *Velikanje, Moore & Shore, Inc., P.S.,* for appellants.

*Lucinda S. Whaley* and *Winston & Cashatt*; and *Erika Balazs, Clark H. Richards,* and *Lukins & Annis, P.S.,* for respondents.

SWEENEY, C.J. — We are asked in this case to revisit the preemptive reach of the Federal Insecticide, Fungicide and Rodenticide Act[1] (FIFRA) in Washington in light of a recent United States Supreme Court opinion, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996). We conclude that *Medtronic* does not change the holding reached by our Supreme Court that FIFRA preempts state common-law causes of action based on labeling. *All-Pure Chem. Co. v. White*, 127 Wn.2d 1, 896 P.2d 697 (1995); *Goodwin v. Bacon*, 127 Wn.2d 50, 896 P.2d 673 (1995); *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 896 P.2d 682 (1995). We therefore affirm the superior court's summary dismissal of Don and Alice Didier's and Curt and Melinda Didier's complaint.

## FACTS

Drexel Chemical Company manufactures a liquid growth retardant used to prevent potato sprouting, called "Super Sprout Stop." It distributes its product in the Columbia Basin of Washington through a wholesaler, Tri-River Chemical Company, Inc. Tri-River distributes Super Sprout Stop to H & R Ag, Inc., a retailer. The Didiers grow potatoes. They bought Super Sprout Stop from H & R Ag to "size" their potatoes. Sizing stops very small or newly formed potatoes from reducing the potential size of a potato in an existing crop. The Super Sprout Stop application damaged the Didiers' crop.

Drexel had distributed an information sheet suggesting that Super Sprout Stop be applied at temperatures below 80 degrees and that it should not be applied if the temper-

---

[1] 7 U.S.C.A. § 136 (West 1980 & Supp. 1996).

ature is expected to exceed 85 degrees on the day of application. It gave the information sheet to distributors only. It did not supply the sheet with the product.

The Didiers sued Drexel for failure to warn, breach of express and implied warranties, violation of Washington's Uniform Commercial Code, violation of the Washington Consumer Protection Act, and negligence. They claimed their crop was damaged because Drexel failed to tell them about the temperature restrictions for application of Super Sprout Stop.

Drexel removed the case to federal court. The Didiers joined Tri-River and H & R Ag. The joinder eliminated the complete diversity required for federal jurisdiction. And the federal district court remanded the case to state court. The Didiers filed a second amended complaint alleging the same claims as their first complaint against Drexel, Tri-River and H & R Ag. Drexel along with Tri-River and H & R Ag moved for summary judgment. The superior court concluded that FIFRA preempted the Didiers' claims and dismissed the complaint. The Didiers appeal.

## DISCUSSION

■ FIFRA Preemption. Federal preemption of state law occurs in three ways: a federal statute expressly preempts state law, federal law occupies an entire field of regulation, or state law conflicts with federal law. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 326-27, 858 P.2d 1054 (1993). We presume that Congress did not intend to preempt a field unless that intention is clear and manifest. *Goodwin*, 127 Wn.2d at 57.

FIFRA is the primary federal regulatory scheme for pesticides. It grants the Environmental Protection Agency (EPA) authority over registration, labeling, and enforcement. FIFRA mandates that the EPA register all pesticides distributed or sold in the United States. 7 U.S.C.A. § 136a (West 1980 & Supp. 1996); *Goodwin*, 127 Wn.2d at

52. The preemption provisions of FIFRA are set out in section 136v of the act:

**Authority of States**

**(a) In general**

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

**(b) Uniformity**

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C.A. § 136v(a)-(b) (West Supp. 1996).

The scope of this preemption has been the subject of three recent Washington Supreme Court opinions. *All-Pure Chem.*, 127 Wn.2d 1; *Goodwin*, 127 Wn.2d 50; *Hue*, 127 Wn.2d 67. In all three, the court held, based on section 136v, that FIFRA preempts certain state tort claims. *All-Pure Chem.*, 127 Wn.2d at 10 ("failure to warn"); *Goodwin*, 127 Wn.2d at 66 (inadequate labeling); *Hue*, 127 Wn.2d at 86-87, 90 (inadequate warnings and instructions, negligence, and implied warranty).

Effect of *Medtronic*. The Didiers' primary contention is that the preemptive reach of FIFRA has been eroded by the United States Supreme Court's recent decision in *Medtronic*. There, the plaintiff was injured by a defective pacemaker. The pacemaker was "substantially equivalent" to devices developed and manufactured before adoption of the Medical Device Amendments of 1976 (MDA) to the federal Food, Drug, and Cosmetic Act. The Food and Drug Administration therefore allowed Medtronic to market the device without the usual testing required by the MDA.

The MDA's preemptive clause provides that

no State or political subdivision of a State may establish or

continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C.A. § 360k(a) (West Supp. 1997). A plurality of the Supreme Court strictly construed the term "requirement." It concluded that the MDA did not preempt Florida state common-law causes of action for negligent design, manufacturing, or labeling for this faulty pacemaker. *Medtronic*, 116 S. Ct. at 2256-58.

*Medtronic* is not controlling here for several reasons. First, the primary complaint in *Medtronic* was that the product—a pacemaker—was defective. Here, the Didiers complain that they should have been warned not to apply Super Sprout Stop at high temperatures. The Didiers do not claim that the product is defective.

Second, the preemptive language of FIFRA and MDA is different. The preemptive language of FIFRA is broad and inclusive:

Such State shall not impose or continue in effect *any requirements for labeling or packaging* in addition to or different from those required under this subchapter.

7 U.S.C.A. § 136v(b) (emphasis added). The preemptive language of the MDA, on the other hand, is more specific:

[N]o State or political subdivision of a State may establish or continue in effect *with respect to a device intended for human use any requirement*—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device . . . .

21 U.S.C.A. § 360k(a)(1) (emphasis added).

Language in MDA's preemptive clause also supports

our conclusion that use of "requirements" is limited to state statutory and regulatory law, not common law. Also, as the Court noted in *Medtronic*, the use of the term "requirements" in the MDA is linked to device-specific legislative or administrative rules rather than common law requirements. *Medtronic*, 116 S. Ct. at 2252; *see also Lewis v. American Cyanamid Co.*, 294 N.J. Super. 53, 682 A.2d 724, 731 (1996). FIFRA does not similarly limit the term "requirements."

*Medtronic* should not alter the preemption analysis of *All-Pure, Goodwin*, or *Hue*.

■ Washington's Preemption Analysis. We shift our analysis then to the application of well established Washington law. FIFRA preempts only those causes of action which would have the effect of imposing a requirement in addition to or different from that imposed by FIFRA. *Goodwin*, 127 Wn.2d at 64; *Hue*, 127 Wn.2d at 77. "The court must consider each specific claim to determine whether the predicate legal duty constitutes, in this case, a requirement in addition to or different from that imposed by FIFRA or the EPA." *Goodwin*, 127 Wn.2d at 64. With this test in mind, we consider each of the Didiers' claims.

Failure to Warn. In the federal district court case, the Didiers asserted a cause of action for "failure to warn." After remand to the state superior court, the Didiers filed a second complaint; it did not allege a "failure to warn" cause of action. They nonetheless complain that Drexel should have told them not to apply Super Sprout Stop under certain temperature conditions.

■ Their claim is necessarily "predicated upon a state duty to provide warnings and instructions that are necessary to make a product reasonably safe." *Hue*, 127 Wn.2d at 86; *see also* RCW 7.72.030(1). Such a duty constitutes a requirement for labeling or packaging in addition to or different from the information required under FIFRA. *Hue*, 127 Wn.2d at 86. It is therefore preempted.

Express Warranty. The Didiers next argue that Drexel

is liable because of an express written warranty that it would be responsible for any damages caused by the pesticide if used in accordance with the label's instructions. *See* RCW 7.72.030(2)(b). They find this express warranty by implication from the following:

**WARRANTY—CONDITION OF SALE:**

. . . . Buyer assumes all risks of use, storage and handling of this material not in strict accordance with directions given herewith. In no case shall Drexel or the Seller be liable for consequential, special or indirect damages resulting from the use or handling of this product when such use and/or handling is not in strict accordance with directions given herewith. The foregoing is a condition of sale by Drexel Chemical Company and is accepted as such by Buyer.

Drexel counters that this is not an express warranty but a disclaimer. Even if we were to conclude it was an express warranty, it would not provide the basis for liability.

The specific question here—whether express warranties have been preempted by FIFRA—has not been answered by this state. Other courts come down on both sides of the question. In *Jillson v. Vermont Log Bldgs., Inc.*, 857 F. Supp. 985, 990 (D. Mass. 1994), the district court relied on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525-27, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (recognizing that since an express warranty is measured by the terms of the warranty, an action for breach of the express warranty cannot be regarded as a state-imposed requirement). Based on *Cipollone*, the judge in *Jillson* concluded that a cause of action for breach of an express warranty is not a requirement and therefore not preempted. *Jillson*, 857 F. Supp. at 990. In *Higgins v. Monsanto Co.*, 862 F. Supp. 751, 760-61 (N.D.N.Y. 1994), the court held that claims for breach of an express warranty will only be preempted if based on an *EPA-mandated* labeling requirement as opposed to an *EPA-approved* labeling requirement.

But a majority of courts hold that if the express warranty claim is based on an EPA-approved label, it is

preempted—period. *Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 564 (1st Cir. 1996); *Taylor Ag Indus. v. Pure-Gro*, 54 F.3d 555, 562-63 (9th Cir. 1995); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993); *Clubine v. American Cyanamid Co.*, 534 N.W.2d 385, 387 (Iowa 1995); *see Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129-30 (4th Cir. 1995) (recognizing majority rule but resolving issue on other grounds).

■ *Taylor Ag* is typical. There, the plaintiffs' breach of an express warranty claim was based on a product guide that contained mixing instructions. The mixing instructions were consistent with the labels on two defoliants. The Ninth Circuit held that the manufacturer's "liability for such an express warranty would be predicated upon a duty to provide information in addition to or different from that required by FIFRA." *Taylor Ag*, 54 F.3d at 562.

The claims in *Taylor Ag* are similar to the Didiers'. The Didiers base their express warranty cause of action on statements which could have been included in the EPA-approved label. Their claim is necessarily that they should have been warned about potential problems of application of Super Sprout Stop at high temperatures.

We find the district court's reasoning in *Jillson* and *Higgins* unpersuasive. First, in *Jillson*, the court took a statement in *Cipollone* out of context. The Supreme Court in *Cipollone* relied on statements made in Liggett Group's advertising, not those contained in or omitted from the tobacco label. *Cipollone*, 112 S. Ct. at 2621. In *Jillson*, the claim depended on the adequacy of the label for a product called Woodlife. *Jillson*, 857 F. Supp. at 986. Jillson's claims were not based on the advertising claims made by the manufacturer of Woodlife.

In *Higgins*, the court distinguished between an EPA-mandated labeling requirement and an EPA-approved labeling requirement. That distinction is not helpful here. The net effect if the Didiers prevail is to require inclusion of an additional requirement that Super Sprout Stop not be applied when temperatures are expected to exceed 85

degrees on the day of application. Further, FIFRA's general labeling provisions require that the label contain warning and precautionary statements and directions for use. 40 C.F.R. § 156.10(a)(1)(vii)-(viii) (1997).

The Didiers' express warranty cause of action is preempted.

Implied Warranty of Merchantability. The Didiers next claim that Drexel breached an implied warranty of merchantability because the pesticide is not fit for its ordinary purpose—use on potatoes. *See* RCW 62A.2-314(1)-(2). They do not claim that the product itself—the intended or actual formulation—is flawed. Their claim is that additional information should have been provided to the user.

Although not directly considered in *Hue*, that decision would include such a claim under FIFRA's umbrella. A claim for breach of an implied warranty of merchantability is the "sort of problem that would be cured by adopting an appropriate warning or instruction on the pesticide label." *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 90, 896 P.2d 682 (1995); *see also Taylor Ag*, 54 F.3d at 563 (FIFRA preempts claims for implied warranties of merchantability and fitness for a particular purpose); *Papas v. Upjohn Co.*, 985 F.2d 516, 519-20 (11th Cir. 1993) (FIFRA preempts claim based on implied warranty of merchantability). The Didiers' implied warranty of merchantability claim depends on Drexel's failure to provide information about the temperature restrictions and, therefore, is also preempted by FIFRA.

Consumer Protection Act. The Didiers next argue that Drexel violated Washington's Consumer Protection Act because it did not give a "product information sheet" to ultimate users of the pesticide. *See* RCW 19.86. Drexel thereby allowed use of the pesticide in a manner inconsistent with the information sheet.

As we have noted, the test for preemption is whether a manufacturer, in seeking to avoid liability, would rea-

sonably choose to alter the product or the label because of the state action. *Hue*, 127 Wn.2d at 87-88; *see also Worm*, 5 F.3d at 747-48. Here, Drexel would certainly choose to avoid liability for failure to distribute this product information sheet by altering the label. The Didiers correctly point out that the information sheet is not part of the label. But the question is whether, by imposing liability for failure to distribute the information sheet, a "requirement in addition to" those contained in the label is imposed. It is. *Hue*, 127 Wn.2d at 87-88 (quoting *Worm*, 5 F.3d at 747-48). The Didiers' Consumer Protection Act claim is therefore preempted.

█ Negligence. The Didiers finally claim that Drexel was negligent by failing to distribute the information sheet. Because the negligence claim also depends solely on Drexel's failure to distribute the information sheet, the basis for FIFRA's preemption is amply covered in our discussion of their other claims. Allowing the action would impose a requirement different from or in addition to the FIFRA label.

█ Claims Against Tri-River and H & R Ag. The Didiers assert independent, but identical, causes of action against both Tri-River and H & R Ag. Again, *All-Pure Chem. Co. v. White*, 127 Wn.2d 1, 896 P.2d 697 (1995) is dispositive:

> Imposing a state tort remedy on All-Pure [the distributor] for its failure to provide adequate warnings is, in effect, requiring All-Pure to provide additional warnings. As a distributor, who unlike the retailer does not deal with the ultimate user, the only practical way All-Pure could have provided additional warnings would have been to add to the EPA-approved labeling.

*Id.* at 11-12. The court, in a footnote, added this distinction is meant to imply that a state tort remedy against the retailer is also preempted by FIFRA's labeling requirements. *Id.* at 12 n.3.

Here, the Didiers' claim is that both the distributor and

the retailer were negligent in failing to advise them of the temperature restrictions for applying Super Sprout Stop. The Didiers do not claim, however, that either Tri-River or H & R Ag made any representation that varied from the manufacturer's label. The basis for the Didiers' claim against Tri-River and H & R Ag again depends on a failure to provide information in addition to the label. The effect of imposing liability against the distributor or retailer would be to create a state labeling requirement contrary to FIFRA's preemption. The Didiers' claims are therefore preempted under FIFRA. *Id.* at 11-12 & n.3; *Taylor Ag*, 54 F.3d at 562-63.

Motion to Supplement the Record. The Didiers moved to supplement the record with EPA's Pesticide Regulation Notice 96-4. *See* RAP 9.11. The notice explains the EPA's procedures in approving pesticide labels. Its purpose was to dispel any suggestion that by approval of a label it considers the pesticide's efficacy. But efficacy is not at issue here. Our conclusion that FIFRA preempts the Didiers' claims depends on FIFRA's express preemption provision. The EPA's notice does not change that analysis. We have considered the information as additional authority. RAP 10.8.

## CONCLUSION

The recent United States Supreme Court opinion in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) does not change the conclusion reached by our Supreme Court that FIFRA preempts state common law causes of action based on labeling. In each instance, the claims would impose a requirement different from, or in addition to, that required by FIFRA. FIFRA therefore preempts those causes of action. We affirm the superior court's summary dismissal.

THOMPSON and SCHULTHEIS, JJ., concur.